OPINION OF THE COURT
Simons, J.
Plaintiff, the Islamic Republic of Iran, brings this action against Iran’s former ruler, Shah Mohammed Reza Pahlavi, and his wife, Empress Farah Diba Pahlavi. It alleges in its complaint that defendants accepted bribes and misappropriated, embezzled or converted 35 billion dollars in Iranian funds in breach of their fiduciary duty to the Iranian people and it seeks to recover those funds and 20 billion dollars in exemplary damages. It asks the court to impress a constructive trust on defendants’ assets located throughout the world, for an accounting of all moneys and property received by the defendants from the government of Iran, and for other incidental relief.
The action was commenced in November, 1979 by substituted service on the Shah made at New York Hospital where he was undergoing cancer therapy. The Empress was personally served at the same time at the New York residence of the Shah’s sister, Ashraf Pahlavi. Thereafter, defendants moved to dismiss the complaint alleging that it raised nonjusticiable political questions, that the court lacked personal jurisdiction due to defective service of process on them and that the complaint should be dismissed on grounds of forum non conveniens.[1] Special Term granted defendants’ motion based on forum non conveniens concluding that the parties had no connection with New *478 York other than a claim that the Shah had deposited funds in New York banks, a claim which it found insufficient under the circumstances to justify the court in retaining jurisdiction. A divided Appellate Division affirmed, Justice Fein arguing in dissent that jurisdiction must be assumed because no other forum was available to plaintiff.[2]
On this appeal plaintiff claims that the courts below erred, that the New York courts must entertain this action because the record does not indicate that there is any alternative forum available because the United States Government undertook to guarantee plaintiff an American forum to litigate its claims against the former royal family in the hostage settlement agreements between it and plaintiff known as the Algerian Accords.
 There should be an affirmance. The application of the doctrine of forum non conveniens is a matter of discretion to be exercised by the trial court and the Appellate Division. We do not find that those courts abused their discretion as a matter of law under the circumstances presented, even though it appears that there may be no other forum in which plaintiff can obtain the relief it seeks. Nor is reversal required by the provisions of the Algerian Accords.
Ordinarily, nonresidents are permitted to enter New York courts to litigate their disputes as a matter of comity. Obviously, however, our courts are not required to add to their financial and administrative burdens by entertaining litigation which does not have any connection with this State. The common-law doctrine of forum non conveniens, also articulated in CPLR 327,[3] permits a court to stay or *479 dismiss such actions where it is determined that the action, although jurisdictionally sound, would be better adjudicated elsewhere (see, generally, Siegel, NY Prac, § 28; 1 Weinstein-Korn-Miller, NY Civ Prac, par 327.01, pp 3-469 — 3-470). The burden rests upon the defendant challenging the forum to demonstrate relevant private or public interest factors which militate against accepting the litigation (see Piper Aircraft Co. v Reyno, 454 US 235; Bader & Bader v Fort, 66 AD2d 642) and the court, after considering and balancing the various competing factors, must determine in the exercise of its sound discretion whether to retain jurisdiction or not. Among the factors to be considered are the burden on the New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit (Banco Ambrosiano, S.p.A. v Artoc Bank & Trust, 62 NY2d 65; Irrigation & Ind. Dev. Corp. v Indag S.A., 37 NY2d 522, 525; Varkonyi v S. A. Empresa De Viacao Airea Rio Grandense [Varig], 22 NY2d 333, 335). The court may also consider that both parties to the action are nonresidents (Bata v Bata, 304 NY 51) and that the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction (Silver v Great Amer. Ins. Co., 29 NY2d 356, 361). No one factor is controlling (see Irrigation & Ind. Dev. Corp. v Indag S. A., supra; see, also, Piper Aircraft Co. v Reyno, 454 US 235, supra; Gulf Oil Corp. v Gilbert, 330 US 501, 508). The great advantage of the rule of forum non conveniens is its flexibility based upon the facts and circumstances of each case (Martin v Mieth, 35 NY2d 414, 418; Silver v Great Amer. Ins. Co., supra). The rule rests upon justice, fairness and convenience and we have held that when the court takes these various factors into account in making its decision, there has been no abuse of discretion reviewable by this court (Banco Ambrosiano, S.pA. v Artoc Bank & Trust, supra; Irrigation & Ind. Dev. Corp. v Indag S.A., supra; Varkonyi v Varig, supra, at p 337).
Here, the trial court and the Appellate Division considered all of the relevant factors, including the fact that there may be no alternative forum in which this claim can be tried because of the political situation in Iran under *480 the Khomeini regime. They also noted the substantial financial and administrative burden on the New York courts, the genesis of the claims in Iran, the likely applicability of Iranian law, the nonresidence of both parties and that plaintiff was requesting a sweeping review of the conduct of the Shah’s government during the 38 years of his reign, a review which undoubtedly would require extended trial and pretrial proceedings and which would necessitate the appearance of many foreign witnesses not only to establish liability but also to discover and evaluate defendant’s assets. Indeed, plaintiff’s appendix lists two and one-half pages of single-spaced typewritten entries of property of all kinds throughout the world allegedly owned or controlled by defendant and the royal family through the Pahlavi Foundation. The courts below, after reviewing these factors, concluded that the public interest factors involving the court system and the private interest factors affecting defendant outweighed plaintiff’s claim to litigate this action in the New York courts notwithstanding the unavailability of an alternative forum.
Plaintiff contends that this was error because the availability of an alternative forum is not merely an additional factor for the court to consider but constitutes an absolute precondition to dismissal on conveniens grounds.
The perceived requirement that an alternative forum must be available had its origin in dicta by the United States Supreme Court in Gulf Oil Corp. v Gilbert (330 US 501, 507, supra). Writing for the court, Justice Jackson stated (at pp 506-507): “In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.” The Gulf Oil case involved a New York dismissal of a Virginia-based action on the ground that all the relevant contracts were with Virginia. Unlike the present case, there was plainly an alternative forum present in Gulf Oil and the court’s statement was unnecessary to the result. Nevertheless, the dictum has persisted and has been quoted in subsequent cases (see, e.g., Piper Aircraft Co. v Reyno, 454 US 235, supra; Calavo Growers v Belgium, 632 F2d 963, 968) and scholarly treatises (1 Weinstein-Korn- *481 Miller, NY Civ Prac, par 327.02, p 3-479). Indeed, dicta in many of this court’s decisions have also stated it as a general rule (see, e.g., Irrigation & Ind. Dev. Corp. v Indag S.A., 37 NY2d 522, 525, supra; Silver v Great Amer. Ins. Co., 29 NY2d 356, 361, supra; Varkonyi v Varig, 22 NY2d 333, supra).
Without doubt, the availability of another suitable forum is a most important factor to be considered in ruling on a motion to dismiss but we have never held that it was a prerequisite for applying the conveniens doctrine and in Varkonyi we expressly described the availability of an alternative forum as a “pertinent factor”, not as a precondition to dismissal (at p 338). Nor should proof of the availability of another forum be required in all cases before dismissal is permitted. That would place an undue burden on New York courts forcing them to accept foreign-based actions unrelated to this State merely because a more appropriate forum is unwilling or unable to accept jurisdiction (see Korbel, Law of Federal Venue and Choice of Most Convenient Forum, 15 Rutgers L Rev 607, 611, n 28; see, also, Ferguson v Neilson, 58 Hun 604, opn in 33 NY St Rep 814, 11 NYS 524; Noto v Cia Secula di Armanento, 310 F Supp 639). Moreover, even if we were to hold that the motion should be denied if no alternative forum is available, then the burden of demonstrating that fact should fall on plaintiff. Its presence in the New York courts is a matter of choice and permitted because of comity and the public and private burden of its action appearing, it should justify the need for New York to assume jurisdiction (Blair, Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col L Rev 1, 33-34 [holding that there need not be an alternative forum available before dismissal is warranted]). The result may appear arbitrary to some but forum non conveniens dismissals are not the only instance in which New York courts decline to entertain jurisdiction even though no alternative forum may exist. Typically, the courts also refuse to adjudicate claims otherwise actionable because they involve unclean hands, diplomatic immunity and claims in which the applicable law is penal in nature or is contrary to the public policy of the forum State (see Restatement, Conflict of Laws 2d, § 85, and Comment a; §§ 89, 90; Siegel, Conflicts in a Nutshell, §§ 49-53).
*482 In this case the convenience of the plaintiff is served because it acquired jurisdiction over defendant in New York. That circumstance is entitled to some weight, although less than usual because nonresident parties are involved (see Piper Aircraft Co. v Reyno, 454 US 235, 255-256, supra), but generally, a plaintiff must be able to show more than its own convenience for selecting the forum when the choice imposes a heavy burden on the court and the defendant (Gulf Oil Corp. v Gilbert, supra, at p 508). To that end, plaintiff claims the action should proceed in this jurisdiction because assets of the Shah are located here. Nothing before us establishes that fact, however, and the Surrogate’s Court has apparently found no grounds for ancillary administration of the estate yet (see n 1, infra). The absence of an alternative forum is the only substantial consideration advanced for denial of the motion.
Arrayed against this is the substantial burden upon the courts of this State and the possibility that its judgment may be ineffectual because of its inability to impose a constructive trust on defendant’s assets if they are not in New York. Moreover, defendant probably cannot defend this claim in any realistic way because the witnesses and evidence are located in Iran under plaintiff’s control and are not subject to the mandate of New York’s courts. Indeed, plaintiff’s counsel conceded on oral argument that ideally the action should be maintained in Iran but contended that New York was the better forum. If the action cannot be maintained in Iran, however, under laws which result in judgments cognizable in the United States or other foreign jurisdictions where the Shah’s assets may be found, then that failure must be charged to plaintiff. It is, after all, the government in power, not a hapless national victimized by its country’s policies. Any infirmity in plaintiff’s legal system should weigh against its claim of venue, not impose disadvantage on defendant or the judicial system of this State.
As the dissent states (and as has been noted above), some courts and commentators have taken the view that an action will not be dismissed on forum non conveniens grounds unless a suitable alternative forum is available to plaintiff (see Gulf Oil Corp. v Gilbert, 330 US 501, 508, *483 supra [dictum]; Restatement, Conflict of Laws 2d, § 84, p 251; see, also, Vandam v Smit, 101 NM 508; Hill v Upper Miss. Towing Corp., 252 Minn 165). At the threshold we note that the Supreme Court, while ruling with respect to procedural rights in the Federal courts, has never suggested that the doctrine of forum non conveniens implicates constitutional due process rights. Although the existence of a suitable alternative forum is a most important factor to be considered in applying the forum non conveniens doctrine, its alleged absence does not require the court to retain jurisdiction. Plaintiff has failed to establish that no alternative forum exists and, even if it were assumed that normally an alternative forum is a prerequisite and that plaintiff has none, a forum non conveniens dismissal is still warranted when plaintiff’s chosen forum is unable to afford the parties appropriate relief (Restatement, Conflict of Laws 2d, § 85). Despite the fact that plaintiff’s complaint requests monetary relief, it really seeks a sweeping review of the political and financial management of the Iranian government during the several years of the late Shah’s reign with the object of accounting for and repossessing the nation’s claimed lost wealth wherever it may be located throughout the world. For the reasons stated, that relief cannot properly be afforded by a New York forum with little if any nexus to. the controversy and the taxpayers of this State should not be compelled to assume the heavy financial burden attributable to the cost of administering the litigation contemplated when their interest in the suit and the connection of its subject matter to the State of New York is so ephemeral (Silver v Great Amer. Ins. Co., 29 NY2d 356, 361, supra; Bata v Bata, 304 NY 51, 56, supra; Pietraroia v New Jersey & Hudson Riv. Ry. & Ferry Co., 197 NY 434, 439).
Finally, it should be noted that the Federal cases cited in the dissent rest upon the Federal “change of venue” statute (US Code, tit 28, § 1404, subd [a]) which is substantially different from New York’s CPLR 327 because a successful motion under Federal law results in a transfer of the case to another district within the country. New York’s statute contains no similar provision (Siegel, NY Prac, § 28, p 28).
In sum, the record does not demonstrate a substantial nexus between this State and plaintiff’s cause of the ac *484 tion. That being so the courts below could, in the exercise of their discretion, dismiss the action on grounds of forum non conveniens notwithstanding the fact that the record does not establish an alternative forum where the action may be maintained and they could do so without conditioning their dismissal on defendant’s acceptance of process in another jurisdiction.
The arising from the seizure of American hostages in Iran was settled on January 19,1981 when Iran and the United States executed the General Declaration and the Claims Settlement Declaration, agreements commonly known as the Algerian Accords. These agreements dealt primarily with the unfreezing of Iranian assets located in the United States and the method for resolving suits by nationals of the United States against the government of Iran. They also provided that the United States Government would take certain steps in connection with legal actions involving the Shah’s property. Specifically, the United States agreed to freeze the Shah’s assets within this country, to inform United States courts that in any litigation involving Iran and the Shah’s estate sovereign immunity and the Act of State doctrine were not available as defenses and to guarantee the enforcement of any final judgments involving these matters. Any claimed failure of the United States to meet these treaty obligations was made subject to arbitration between the signatories in a specially designated international tribunal and its award of damages to plaintiff for the breach could be enforced in the courts of any nation. In addition, a summary statement issued by the United States Government prior to the signing of the Accords stated that it would advise American courts of the right of the Iranian government to bring an action in this country to recover the Shah’s assets. Plaintiff contends that these promises preclude New York courts from dismissing the action on forum non conveniens grounds.
At the time the Accords were executed, this action had been instituted in Supreme Court and there was pending a motion to dismiss, made several months earlier, *485 based upon defendant’s contentions that the action involved a nonjusticiable political question, that plaintiff had unclean hands and on grounds of forum non conveni-ens. Indeed, the action was mentioned in an earlier communication of the United States directed to the government of Iran on December 3,1980. Nevertheless, although the Accords when finally concluded contained specific provisions concerning plaintiff’s claims against the Shah and his family, they contained no reference to the pending suit asserting those claims nor did the United States guarantee that a forum would be available to plaintiff to litigate them.
Plaintiff asserts, however, that various statements issued by the State Department when read in conjunction with these treaties evidence a commitment by the United States to assure that New York courts would entertain plaintiff’s claim. It refers particularly to a State Department summary of the United States position on the Iranian situation, which indicated that the Federal Government would “facilitate any legal action” brought by the government of Iran to recover on claims to the former Shah’s assets and request the court’s assistance in obtaining information about such assets (Summary Report, Hostage Crisis in Iran, 1979-1981, submitted by Secretary of State Edmund Muskie in Hearings before the Senate Committee on Foreign Relations, 97th Cong, 1st Sess, Feb. 17, 18 and March 4, 1981, p 14).
Generally, a treaty is to be construed according to principles applied to written contracts between individuals and the clear language of the treaty controls unless it is inconsistent with the intent or expectations of the parties (Sumitomo Shoji Amer. v Avagliano, 457 US 176; Sullivan v Kidd, 254 US 433, 439; Hamilton v Erie R.R. Co., 219 NY 343, 352-353). Permissibly the history of the treaty, diplomatic correspondence and other extraneous documents may be considered to discover that intent (see Sumitomo Shoji Amer. v Avagliano, supra, at p 180; Maximov v United States, 373 US 49, 54; Ross v Pan Amer. Airways, 299 NY 88; and see, generally, Restatement, Foreign Relations Law of United States [rev-Tent Draft No. 1], § 329 et seq.). We have no difficulty interpreting the Accords and *486 the extraneous evidence submitted by the parties to determine that the United States Government did not guarantee plaintiff a New York forum for its claim. Neither the agreements nor the statement of the Summary Report indicates otherwise when analyzed in terms of the natural and ordinary meaning of the words used (see Sullivan v Kidd, supra, at p 439; Hamilton v Erie R.R. Co., 219 NY 343, 352-353, The Federal Government simply expressed a willingness to “facilitate” or aid Iran in bringing the claims, presumably by complying with the limited promises it made in the Accords. Indeed, inasmuch as treaties are subject to constitutional restraints (Reid v Covert, 354 US 1; Restatement, Foreign Relations Law of United States [rev-Tent Draft No. 1], § 304), it is questionable whether the Federal Government could guarantee a New York forum by treaty without violating constitutional principles of federalism and separation of powers (see, generally, Guaranty Trust Co. v United States, 304 US 126, 140 [Statute of Limitations]; see, also, United States v Pink, 315 US 203, 216, 230-234).
The precedents cited by plaintiff are not helpful (Dames & Moore v Regan, 453 US 654; United States v Pink, 315 US 203, supra; United States v Belmont, 301 US 324). Those cases concern the broad powers of the Federal Government to mandate that the resolution of claims against Iran by nationals of the United States shall be pursued in an international tribunal (Dames & Moore v Regan, supra), or to implement the right of the Soviet government (by assignment to the United States) to recapture Russian assets held by Americans or American institutions in this country (United States v Pink, supra; United States v Belmont, supra). Such commitments of the Federal Government to resolve claims between the signatories or nationals are viewed liberally because unless resolved the claims may provide continuing irritations and conflicts which interfere with peaceful relations between the nations. Similar commitments are made in Points I-III of the General Declaration and in the Claims Settlement Declaration of the Accords and are not at issue here. This is litigation by a foreign government against its own national who happened to be within the State of New York at the *487 time this suit was commenced. It involves an internal dispute, not normally a matter considered in the exercise of treaty powers and a matter which does not generally engage the national interest to the same extent as claims by nationals of one signatory nation against the other signatory nation (see Nowak-Rotunda-Young, Constitutional Law [2d ed], p 202).
The parties have culled statements from the various documents and communiques and the testimony of witnesses before the Senate allegedly supporting their respective positions. The evidence suggests, however, that the State Department recognized the problems inherent in this litigation and the restraints of federalism in our system of government and that, as Mr. Warren Christopher, the United States negotiator, stated in his testimony before the Senate, the courts would have to decide whether plaintiff had “a right [to maintain this action] within our legal system” (Senate Committee on Foreign Relations Hearing, 97th Cong, 1st Sess, Feb. 17, 1981, at p 56). The United States agreed that plaintiff would not be foreclosed from pursuing its claim in our courts by preclusive doctrines of international law but it did not undertake to guarantee the opportunity for plaintiff to prove its claim in the New York courts. The United States has met its commitment to “facilitate” this lawsuit by freezing the Shah’s assets and by advising the courts that the Act of State doctrine and sovereign immunity principles are not to apply to plaintiff’s claim. Nothing in the record or in its communication to the trial court suggests that a promise was made that it or the courts would do more.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The Shah died while the motion was pending before Special Term and no party has been substituted to represent him. Accordingly, the appeal should be dismissed (CPLR 1021).

. Defendant argues that the court lacks personal jurisdiction over her, even though she was served in accordance with applicable State law, because her contacts with this State were insufficient under modern standards of due process (see Shaffer v Heitner, 433 US 186, 203-204). Special Term rejected this argument and defendant has cross-appealed. This court dismissed defendant’s cross appeal on March 22,1984 on the ground that she was not a party aggrieved. (See Cohen and Karger, Powers of the New York Court of Appeals [rev edj, § 91, p 395.)

. The statute reads as follows: “When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action.”