■ STATE OF ROMANIA, Appellant, v FORMER KING MICHAEL, Respondent. [622 NYS2d 704] —Judgment, Supreme Court, New York County (William J. Davis, J.), entered July 15, 1994, which dismissed the amended complaint, unanimously affirmed, without costs.

Although defendant was personally served with process within this State, it is nonetheless clear that the action should not be maintained here, on the ground of forum non conveniens *(see, Islamic Republic of Iran v Pahlavi,* 94 AD2d 374, *affd* 62 NY2d 474, *cert denied* 469 US 1108).

Plaintiff's claims arise out of the 1899 will of Carol I, first King of Romania, who bequeathed his art collection to the Crown. Upon Carol's death in 1914, he was succeeded to the throne by his nephew (defendant's grandfather), Ferdinand I. In 1925 King Ferdinand forced his flamboyant son, Carol II, to renounce his right to succession and go into exile, elevating

the defendant grandchild to Crown Prince at the tender age of 4. When Ferdinand died a year later, defendant became the royal ward of a ruling regency. Carol II returned in 1930 to wrest the throne from the regency, reinstating his infant son as Crown Prince. Carol II's reign was marked by the dissolution of the monarchy into a corporatist dictatorship, and he was forced to abdicate in 1940. The teenage defendant returned to the throne in the midst of World War II, now a virtual prisoner of a fascist military regime. In 1944 defendant overthrew the military regime and switched his country to the Allied side in the war. When the communists took control of the government in 1947, defendant was forced to abdicate and go into exile. Since then he has lived in Switzerland with his wife, Princess Ann de Bourbon-Parma.

In 1989-90, the communist regime was overthrown and replaced by a democratic socialist republic which then arrested and executed the former President, Nicolae Ceausescu, and his wife. Plaintiff, the successor government, has assertedly begun the process of reclaiming its artistic patrimony, which has allegedly been scattered throughout Europe and, for our purposes, New York.* The instant action is in furtherance of that goal.

This action was commenced on May 30, 1993, by service of the original summons and complaint on defendant while he was temporarily in New York City to attend a benefit at the Pierre Hotel. This followed by ten days the filing of a similar complaint in a Swiss court.

Adjudication of this case would necessitate review of transactions and events which took place abroad, and require interpretation of constitutional, property and testamentary law not only in present-day Romania, but during the Hohenzollern monarchy as well, going back to the 19th century. The fact that plaintiff has already commenced legal action in a European court supports the view that relief should continue to be pursued in that forum.

In light of our decision, defendant's motion to enlarge the record is dismissed as academic. Concur—Murphy, P. J., Sullivan, Wallach, Nardelli and Tom, JJ.

---

* In the 1980s plaintiff's predecessor government sued two art collectors in the United States to recover paintings by El Greco which were allegedly part of this collection. In 1986 a Texas case was dismissed for failure to prosecute *(Socialist Republic of Romania v Kimbell Art Found.*, docket No. CA4 84 176 K [US Dist Ct, ND Tex]), as was a New York action for failure to comply with court-ordered discovery *(see, Socialist Republic of Romania v Wildenstein & Co.*, 147 FRD 62 [SD NY]).