OPINION OF THE COURT
Joseph J. Maltese, J.
This court denies the defendants’ motion to dismiss 924 out-of-state plaintiffs from the 1,117 OxyContin drug cases that have been filed as part of the coordinated products liability actions because New York is an inconvenient forum in which to conduct discovery and ultimately jury trials.
However, the 924 non-New York plaintiffs shall post security for the potential costs that may be awarded the defendants in the event that they are unsuccessful in their actions, pursuant to Civil Practice Law and Rules § 8501.
Facts
On January 24, 2005, this court denied the plaintiffs application to certify a class action on behalf of the plaintiffs, all prescribed users of the pain reliever drug, OxyContin. (See, Hurtado v Purdue Pharma Co., 6 Misc 3d 1015[A], 2005 NY Slip Op 50045[U] [Sup Ct, Richmond County 2005].) While this court found some common issues of law and fact, it denied the plaintiffs a class action pursuant to CPLR 901-902 because the various plaintiffs were legally prescribed the pain reliever, Oxy-Contin, by different physicians for different physical conditions ranging from back pain, postsurgical pain and lymphoma. The plaintiffs claimed that they were not warned that OxyContin could be addictive when taken as directed and each claimed that they could become addicted to the drug.
CPLR 901 (a) which is similar, but not identical, to rule 23 of the Federal Rules of Civil Procedure lists the prerequisites to a class action which include whether there is a sufficient number of claims that would be joined, which was never contested. However, CPLR 901 (a) also requires that the common questions of law or fact predominate over any questions affecting only individual members. Here, the factual reasons surrounding the prescription for and the administration of the drug varied from plaintiff to plaintiff and, consequently, the requirement of commonality was not met.
Moreover, New York employs the “Informed Intermediary Doctrine,” whereby the prescribing physician acts as an “informed intermediary” between the manufacturer and the *390 patient. The manufacturer issues warnings with the drug, which are typically found in the Physician’s Desk Reference and as inserts in the packaged drug. Whether adequate warnings are given to the patient from the physician is an individual issue with each patient and physician and is thereby not common to all members of the proposed class of prescribed drug users.
Moreover, the requirement that the results are “typical” was also not met in that each plaintiff had a different injury ranging from sexual dysfunction to nightmares, to symptoms of withdrawal and social ineptitude. In short, no typical injury or signature disease, such as mesothelioma or asbestosis from prolonged exposure to asbestos had been claimed.
While realizing that there were some common issues of fact and law, which could more efficiently be handled in the discovery process, this court forwarded the case to the New York Litigation Coordinating Panel pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.69 for further disposition.
On July 8, 2005 the New York Litigation Coordinating Panel directed that to promote efficiency, all of the OxyContin cases pending in the various counties of New York and those to be later filed in New York shall be coordinated for discovery and pretrial matters in the Supreme Court of Richmond County wherein Justice Joseph J. Maltese was assigned as the coordinating judge.
On August 26, 2005, counsel for plaintiffs filed 1,000 individual cases by summons and complaint against the Purdue Pharma Company, Purdue Pharma, L.P, Purdue Pharma, Inc., the Purdue Frederick Company, Inc. and the Purdue Frederick Laboratories, Inc. Thereafter, the plaintiffs filed an additional 117 individual cases against the same defendants. However, as a result of a national legal advertising campaign by plaintiffs’ counsel to solicit potential claimants, the plaintiffs were not all New York residents. Nine hundred and twenty-four of the 1,177 plaintiffs resided in virtually all of the states of the nation, as well as in Canada and the United Kingdom.
The plaintiffs’ counsel are comprised of three law firms acting in concert: two are New York law firms and one is an Illinois law firm, Simmons Cooper, LLC, which has verbally requested that Tor A. Hoerman, Esq., Gary L. Payne, Esq., and John A. Brueger, Esq., of that firm all lie admitted pro hoc vice, for these cases, which, without objection, this court grants. The lead firm for the plaintiffs is Hanly Conroy Bierstein & Sheridan, LLP of New York City, along with local Richmond County *391 counsel of John D’Amato, Esq., of the law firm of Russo, Scamardella & D’Amato. Ml of the defendants are represented by Chadbourne & Park, LLP of New York City, with local Richmond County counsel of Harold Siegel, Esq.
On December 29, 2005, this court issued an order wherein all 1,117 pending coordinated actions, together with any other similar actions filed thereafter, shall be captioned collectively for purposes of handling common issues and shall be known as “In Re OxyContin under Index No. 700,000/2005.” On March 31, 2006 this court issued case management order No. 1 to govern discovery and other matters.
Oral argument was had with reference to the instant motions to dismiss 924 out-of-state plaintiffs from the 1,117 coordinated matters before this court on the basis that this court is an inconvenient forum to hear the out-of-state plaintiffs’ cases pursuant to CPLR 327 and appellate case law. This court also reviewed the arguments to fix security for costs to be given by the out-of-state plaintiffs pursuant to CPLR 8501.
Discussion
The defendants do not contest the jurisdiction of this court for any of the 1,117 plaintiffs. The defendants argued that the plaintiffs and their doctors are not located in New York and hence, there is no nexus to this state. Moreover, the subpoena power of this court to order that medical records be produced or depositions be taken from those out-of-state doctors would be cumbersome, perhaps requiring a commission seeking the assistance of a sister state court.
The plaintiffs responded that the alternative to using commissions for those doctors who are not sued in these cases, but who refused to comply, to dismiss these 924 cases is too extreme. The plaintiffs’ primary reason is that dismissal in this court would start litigation anew in numerous other forums which would be far more cumbersome. Morever, plaintiffs argue that the defendants are disingenuous in their arguments that there are other more convenient forums in which to handle these non-New York plaintiffs. The defendants argued and won in two applications before the Federal Multi-District Court Panel (MDL) that the OxyContin cases not be coordinated before a federal district court judge. In addition, many of these cases may already be time-barred in their home state courts should this court grant the defendants’ application to dismiss them, only to start anew in their home states or a federal district court.
*392 New York is the state wherein the defendants are incorporated. The defendant, Purdue Frederick Company, was founded, incorporated and headquartered in New York. After Purdue moved its corporate headquarters to Connecticut, the company maintained its research and development facility in Westchester County — first, in Yonkers, and then, since 1998, in Ardsley, New York. The research and development facility is significant because it is where Purdue developed its products — including OxyContin. Two of the four investors listed on OxyContin patent No. 5,508,042, described as “Controlled Release Oxycodone Compositions,” list New York as their home.
Purdue’s general counsel lists a New York office address. The structure of Purdue’s various business entities suggests a greater connection to New York than is otherwise apparent. In March 2004, Purdue served an answer and affirmative defenses in one of the pending OxyContin cases. According to the information set forth by Purdue in that answer, defendant Purdue Pharma, L.R is a Delaware limited partnership with its principal place of business in Connecticut — but its sole general partner is (or was) Purdue Pharma, Inc., a New York corporation. The limited partnership interest of Purdue Pharma, L.E is held by a Delaware limited partnership, the general partner of which is (or was) also a New York corporation and the limited partner of which is yet another limited partnership with a New York corporate general partner. The two other defendants named in this action — Purdue Pharma, Inc. and the Purdue Frederick Company, Inc. — are (or were) New York corporations.
Only after plaintiffs began bringing actions against Purdue in New York did Purdue alter its corporate structure to reduce the role of, or eliminate, the New York entities.
Purdue’s connections to New York are further emphasized by its choice to have New York counsel handle all OxyContin litigation, regardless of where the case is filed. Chadbourne & Park, LLP of New York City has represented Purdue throughout the nation. Indeed, Chadbourne & Park, LLP apparently has conducted most of the depositions in these cases at their offices in New York City.
As outlined above, plaintiffs’ counsel initially filed an action with five plaintiffs who resided in Staten Island (Richmond County), New York, wherein they sought a class action, which was denied. Thereafter, by order of the New York Litigation Coordinating Panel, all of the OxyContin cases pending or to be filed in courts throughout New York were coordinated before *393 the Supreme Court, Richmond County, and designated to Justice Joseph J. Maltese. Hence, this court was a properly selected court by the plaintiffs to file all of their New York plaintiffs’ OxyContin cases. The non-New York plaintiffs through their counsel also chose to file their lawsuits in the defendants’ home state, rather than in the plaintiffs’ numerous home state courts or the various federal district courts as was their right.
It is the burden of the defendants to prove that New York is an inconvenient forum in which to conduct pretrial discovery and ultimately the trials of these non-New York plaintiffs. (Bank Hapoalim [Switzerland] Ltd. v Banca Intesa S.P.A., 26 AD3d 286 [1st Dept 2006].)
The New York Court of Appeals has held that: “The burden rests upon the defendant challenging the forum to demonstrate relevant private or public interest factors which militate against accepting the litigation” (Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479 [1984], cert denied 469 US 1108 [1985]).
The Appellate Division, First Department, has ruled that “unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed” (Waterways Ltd. v Barclays Bank PLC, 174 AD2d 324, 327 [1st Dept 1991]). “The doctrine of forum non conveniens should be applied only when it plainly appears that New York is an inconvenient forum and that the action has no nexus to this state.” (Singh v Swan, 225 AD2d 1057, 1057 [4th Dept 1996] [emphasis added; internal quotation marks omitted], quoting Shepherd Showcase v Pekala, 138 AD2d 960, 961 [4th Dept 1988]; see also Creditanstalt Inv. Bank AG. v Chadbourne & Parke LLP, 4 Misc 3d 481, 486 [Sup Ct, NY County 2004] [forum non conveniens motion denied because “the defendant did not meet (its) heavy burden of demonstrating that plaintiffs’ selection of New York as the forum for the within litigation is not in the interest of substantial justice” (internal quotation marks omitted)].)
The Court of Appeals in Islamic Republic of Iran v Pahlavi outlined the factors to be considered. Among them are the burden on New York courts, the potential hardship to the defendant and the unavailability of an alternative forum in which the plaintiffs may bring suit. The Court of Appeals continued that “[t]he great advantage of the rule of forum non conveniens is its flexibility based upon the facts and circumstances of each case.” (Id. at 479.) Because of the flexibility of the doctrine and the case-by-case nature of the analysis, the Court has further held that the rule of forum non conveniens “rests upon justice, fair *394 ness and convenience and . . . when the court takes these various factors into account in making its decision, there has been no abuse of discretion reviewable by this court.” (Id.) Pahlavi remains the controlling authority on forum non conveniens in New York and the Court of Appeals has not seen fit to revisit or revise the principles announced in it.
Here, New York is the home state of the defendants; thus discovery of the defendants’ documents and deposition of their witnesses is most easily accommodated along with the overall judicial economy of using the defendants’ documents collectively in one court and controlling and limiting the defendants’ depositions to be taken for all cases pending in this court. This is an overwhelming savings of time and money.
As to the burden on the New York courts, all of these cases are coordinated before one judge so that there is not a duplication of efforts in multiple courts before multiple judges. That is the very reason why similar cases pending in multiple courts of this state are coordinated before one judge (Uniform Rules for Trial Cts § 202.69). Adding 924 non-New York plaintiffs to the 193 New York plaintiffs in this coordinated case may create a greater burden on this court. However, the issues are similar and the defendants’ position on all of the cases is identical. While the added cases may add additional burdens upon this individual judge by virtue of the volume of cases, the overall savings of time and effort to the judicial system far outweighs the burdens.
Deposing treating physicians who are not parties to the action under oath in New York State proceedings is a rare exception in the discovery phase of a tort case. Depositions of treating physicians may only be needed at a trial where the doctor will not appear for live testimony. (See, CPLR 3117 [a] [4].) The discovery that has already taken place in the OxyContin cases has been focused on the experts, whose depositions have already been conducted for the defendants’ convenience.
Moreover, the handling of multiple cases by one coordinating judge has long been the norm in numerous federal proceedings such as Vioxx, Bextra, Celebrex, Zyprexa, Paxil, Ephedra, Accutain, Rezulin, Phen Phen, Baycol, Viagra and Prempro among others, all pharmaceutical cases that have been litigated in MDL consolidated proceedings. The federal experience demonstrates that there are conveniences and advantages to be gained by consolidation.
While coordination of such cases is newer in New York State courts, it is not so novel. Justice Helen Freedman in Supreme *395 Court, New York County, has handled thousands of coordinated cases in asbestos and Rezulin. Justice Shirley Kornreich is handling hundreds of Bextra drug cases. New York is the corporate home to thousands of corporations that are sued. While New York should not become the magnet state for class actions and coordinated actions, some selected sophisticated jurists who are routinely referred these matters are most capable of handling these issues just like federal district court judges.
The defendants through their vigorous defense thwarted the plaintiffs’ attempts before the Federal Multi-District Court Panel to have these cases coordinated before a single United States district court judge. This left the plaintiffs’ counsel with the choices of filing in multiple states and/or federal district courts or consolidate them before an already selected coordinating judge. The choice was obvious for economy of prosecution of these cases. The defense arguments that commissions are burdensome is true, but not more burdensome than prosecuting these cases in 50 state courts and/or 91 United States district courts.
Lastly, if this court were to grant the defendants’ motion to dismiss, some of the plaintiffs may be time-barred from prosecuting this case in either their home state court or a United States district court. Hence, this would be most prejudicial to allegedly injured plaintiffs who originally chose a proper court in which to file their actions.
It is the finding of this court that the defendants have not met their burden in proving that this court is an inconvenient forum. Indeed, this court finds that given all of the facts and circumstances, this court is a most convenient forum in which to prosecute all of these cases.
As is the method in most of these drug product liability cases, the most likely course of events will be to prepare some of the New York plaintiffs’ cases for trial as soon as possible to establish a “bellwether” or bench mark from where progress on the other cases may be established to either dismiss or value the worth of these similar types of cases with a goal of establishing a mechanism for a global or near global resolution of all of these cases.
Accordingly, it is hereby decided that the defendants’ motion to dismiss the 924 non-New York plaintiffs’ cases is denied; and it is further decided that the defendants’ motion seeking security for the costs of the 924 non-New York plaintiffs is granted *396 to the extent of $500 per non-New York plaintiff or $462,000 in cash or bond, unless such security shall be further waived by the parties.