NEW MEDIA HOLDING COMPANY LLC, VG MANAGING MEMBER CORP, Plaintiff,

against
EAST WEST UNITED BANK SA, Defendant.


Index No. 652495/2019

For plaintiffs, Covington & Burling (Clarence William Phillips), 620 Eighth Ave., NY NY 212-841-1041
For defendant, Morgan, Lewis and Bockius, LLP (Elizabeth Irene Buechner and Peter Neger), 101 Park Ave., Fl. 45, NY NY 212-309-6769 


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40 were read on this motion to/for DISMISSAL
Upon the foregoing documents, East West United Bank SA's (East-West) motion to dismiss the Amended Complaint pursuant to CPLR § 327 (a) is granted.
The Relevant Facts and Circumstances
The dispute involved in this lawsuit arises under a certain Amendment and Restatement Agreement to a USD 75,000,000 Credit Agreement dated 23 August 2013, as amended on 14 February 2014 and on 4 March 2015, and amended and restated on 31 March 2016 (the Credit Agreement), dated May 19, 2017, between New Century Distribution LLC (NC Distribution), New Media Distribution Company Sezc Ltd. (New Media Distribution), the persons listed in Schedule 1 to the Credit Agreement as guarantors, and East-West as facility agent on behalf of each Finance Party (NYSCEF Doc. No. 9). 
None of the parties to the Credit Agreement are incorporated in the United States. To wit, NC Distribution is incorporated in Switzerland. New Media Distribution and New Media Programming, both guarantors, are incorporated in the Cayman Islands. Other guarantors, Film Production Center LLC, Limited Liability Company Silver Screen, "Forward-Film" Limited Liability Company, and Limited Liability Company Progress Studio (formerly "Navigator" [*2]Limited Liability Company) are all incorporated in Russia. And, Nova Century Holdings Ltd, another guarantor, is incorporated in Gibraltar. East-West is incorporated in Luxembourg and is a wholly owned subsidiary of Sistema Public Joint Stock Financial Corporation (Sistema), which is incorporated in Russia (id., ¶ 12). New Media Distribution and its direct and indirect subsidiaries that directly or beneficially own the New Media Library (the Library) shall hereinafter collectively be referred to as New Media Group. And, the plaintiffs in this action, New Media Holding and VG Managing Member Corp. are a Delaware limited liability company and a Connecticut corporation, respectively, both of whose registered headquarters are located in Greenwich, Connecticut. The plaintiffs assert, however, that during all relevant times, the plaintiffs' business activities were conducted or directed from their offices at 304 Hudson Street, New York, New York (NYSCEF Doc. No. 3., ¶¶ 9-10).
Pursuant to the terms of the Credit Agreement, East-West extended New Media Group a $75 million credit facility, which credit facility was secured by shares of corporate entities within the New Media Group (NYSCEF Doc. No. 3, ¶ 2) pursuant to certain pledge agreements (the Pledge Agreements). The primary value of the shares is derived from New Media Group's ownership of the Library, one of the largest and most valuable Russian-language television and film media libraries (id). The credit facility itself was repayable in installments in USD dollars and according to the plaintiffs was repaid in part in New York.
Nonetheless, the parties did not choose New York law to govern their disputes, as Section 38 of the Credit Agreement provides that the "Agreement and any non-contractual obligations arising out of or in connection with it are governed by English law" (NYSCEF Doc. No. 9). And, they did not pick New York courts for disputes relating to the Credit Agreement, but arbitration in London (except as provided in Section 39.4 Option to litigate) as pursuant to Section 39.2 of the Credit Agreement, disputes were to be referred to and resolved by arbitration under the LCIA Arbitration Rules. Per the Notice provision, Section 31 of the Credit Agreement, notices to East-West were to be sent to their address in Luxembourg, and notices to NC Distribution were to be sent to their address in Switzerland.
In any event, on August 28, 2013, East-West disbursed $25 million of loan proceeds by transferring the funds to JP Morgan Chase in Manhattan, which funds were transferred to the primary obligor, NC Distribution (id., ¶ 23). East-West funded an additional $10 million under the facility in February, 2014 (id., ¶ 27). In March, 2014, a senior representative of Sistema Massmedia contacted New Media Group's CFO, Christopher Renaud, to discuss a proposed merger and joint business with New Media Group and those parties subsequently entered into a non-disclosure agreement in April, 2014 (id., ¶¶ 24-25). However, negotiations ceased after six months when Sistema's founder, Vladamir Yevtushenkov, was placed under "home-arrest" (id., ¶ 26).
In October 2017, Sistema representative, Igor Shebdurasulov, began negotiations with New Media Group's representative, Jan Zamani, to discuss a potential joint venture to establish an Over-the-Top (OTT) television delivery platform, like Netflix, for the Russian-speaking world (id., ¶¶ 32-34). At the end of 2017, according to the plaintiffs, New Media Group had also repaid a portion of the loan proceeds with approximately $9 million remaining outstanding under [*3]the loan (id., ¶ 29). 
By letter, dated December 29, 2017 (NYSCEF Doc. No. 12), New Media Group requested that East-West postpone a scheduled payment of approximately $3 million due December 31, 2017 due to certain economic difficulties in Russia between 2014-2015. In response, East-West accelerated the outstanding amount due under the loan by letter, dated January 15, 2018 (NYSCEF Doc. No. 13). On or about the same time, New Media Group and Sistema had entered into a second non-disclosure agreement, dated January 10, 2018, regarding the OTT project, but soon thereafter Sistema cancelled the negotiations (NYSCEF Doc. No. 3, ¶¶ 35-39).
East-West then commenced arbitration proceedings against Progress Studio LLC, Movie Production Center LLC, New Media Distribution, New Media Programming, and Nova Century Holdings Ltd. in London (NYSCEF Doc. No. 15), along with litigation in the High Court of Justice in England, which litigation was later stayed in favor of the arbitration (NYSCEF Doc. No. 3, ¶¶ 42-43). During arbitration, New Media Group also brought a cross-claim that it was subject to a conspiracy between East-West and Sistema, which ultimately sought to acquire the Library, which cross-claim was withdrawn because the disclosure process in the arbitration did not allow New Media Group to pursue such claims (NYSCEF Doc. No. 34).
The Gravamen of the Complaint
The plaintiffs are direct and indirect majority owners of the New Media Group (NYSCEF Doc. No. 36, ¶¶ 1-2). In sum and substance, the plaintiffs allege that East-West leveraged its position as a Western financial institution to advance the agenda of its Russian parent, Sistema, in order to exploit the Pledge Agreements and obtain ownership of the Library for far less than its true value. 
New Media Holding and VG Managing Member Corp (collectively, the Plaintiffs) filed their Summons and Complaint on April 29, 2019 and its Amended Complaint on May 3, 2019 (NYSCEF Doc. No. 3, the Amended Complaint) in New York State Supreme Court, New York County, alleging (1) breach of the Pledge Agreements, (2) abuse of process, (3) tortious interference with prospective business relations, (4) tortious interference with business relations, and (5) breach of legal obligations under Luxembourg law. On June 10, 2019, East-West filed this motion to dismiss for forum non conveniens.
The gravamen of the Plaintiffs' lawsuit centers on East-West's purported interference with New Media Group and Sistema's negotiations over the OTT project, East-West's initiation of public proceedings in the High Court of Justice in England and the Moscow Arbitration Court, and alleged damages for the loss of prospective value regarding the unrealized OTT business venture and the reduction of the Plaintiffs' interest in the New Media Group. Significantly, none of these events occurred in New York. To the extent that the Plaintiffs seek to characterize this action as based on East-West's role in a scheme involving Sistema to improperly gain control over the Library, the import of the Amended Complaint is that the scheme involved obtaining information via the Second Non-Disclosure Agreement and alleged improper acceleration under the Credit Agreement and Pledge Agreements. Although the Plaintiffs allege that East-West issued certain loan draws from banks in New York, and the Plaintiffs made repayment through [*4]New York banks, these loan payments are not the subject of this lawsuit (Cf. Georgia-Pacific Corp. v Multimark's Intl., Ltd., 265 AD2d 109, 112 [1st Dept 2000] [affirming trial court's denial of motion to dismiss for forum non conveniens because case involved a breach of contract claim where defendant, a BVI corporation, allegedly used its New York bank account to divert funds due to plaintiff, a Georgia corporation). Here, the Plaintiffs assert violations of the Pledge Agreements for breach of East-West's implied obligations (NYSCEF Doc. No. 3, ¶¶ 51-54).
Discussion
CPLR § 327 codifies the common law doctrine of forum non conveniens. Pursuant to CPLR § 327, a court may dismiss an action if it "finds that in the interest of substantial justice the action should be heard in another forum." The resolution of a motion to dismiss on forum non conveniens grounds is left to the sound discretion of the trial court (Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479 [1984]). 
Courts consider the burden on New York courts, potential hardship to the defendant, the unavailability of an alternative forum in which the plaintiff may bring suit, the residence of the parties, and whether the transaction at issue arose primarily in a foreign jurisdiction (id.). Significantly, the plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant and a substantial nexus between New York and the action is lacking (Waterways, Ltd. v Barclays Bank PLC, 174 AD2d 324, 327 [1st Dept 1991]; Elmaliach v Bank of China Ltd., 110 AD3d 192, 208 [1st Dept 2013]). 
East-West argues that every factor generally considered in a forum non conveniens analysis favors dismissal. To wit, East-West asserts that none of the parties to this action reside in New York and nearly all the witnesses and evidence are located overseas. Further, East-West argues that the conduct alleged in the Amended Complaint occurred overseas and the burden on New York courts is substantial as this case will require application of laws from at least three foreign jurisdictions. In addition, East-West argues that prosecution of the action will pose unnecessary hardship because its witnesses are located overseas and alternative forums are available in either England or Luxembourg. Furthermore, any injuries to the Plaintiffs would be felt in their states of incorporation (Delaware and Connecticut), and here, the Plaintiffs maintain offices in Greenwich, Connecticut.
In opposition, the Plaintiffs argue that the action should not be dismissed on forum non conveniens grounds because (i) the Library is maintained in New York and governed by a license agreement which is governed under New York law, (ii) East-West issued draws under the Credit Agreement from New York banks and the New Media Group repaid the loan from a bank in New York, (iii) the Plaintiffs negotiated the relevant agreements from their New York City offices, and (iv) key witnesses and documentation are located in New York. The Plaintiffs further argue that East-West would not suffer hardship by litigating in New York, there would be little burden on this court in applying foreign law, and that both England and Luxembourg are unsuitable alternative forums.
Norex Petroleum Ltd. v Blavatnik is instructive here and guides the court's analysis (151 AD3d 647 [1st Dept 2017]. In Norex, a protracted 13-year litigation, the plaintiff brought a tort action [*5]alleging that the defendants had wrongfully wrested away the plaintiff's majority interest in a Russian oil company. The trial court (Bransten, J.) initially dismissed the case based on a statute of limitation defense. The Appellate Division, First Department, affirmed, but the Court of Appeals reversed and remanded. Following remand, the defendants filed five new motions to dismiss and the trial court then dismissed certain portions of the amended complaint on other grounds, and the remaining portions of the amended complaint on the grounds of forum non conveniens (48 Misc 3d 1226[A]). The First Department affirmed, writing:
the motion court providently exercised its discretion in applying the doctrine of forum non conveniens. What is left of the instant New York state complaint after the Know-How case is the claim that plaintiff (a Cypriot corporation with an office in Canada) should have received dividends from Yugraneft (a Russian company that owns an oil field in Siberia). The key events underlying the claim took place in Russia, where the bulk of the witnesses and documents are located. That the individual defendants may have wired funds from New York does not require a contrary result (see e.g. Mashreqbank PSC v Ahmed Hamad Al Gosaibi & Bros. Co., 23 NY3d 129, 137 [2014]; Bluewaters Communications Holdings, LLC v Ecclestone, 122 AD3d 426, 428 [1st Dept 2014]). "[O]ur courts should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York" (Silver v Great Am. Ins. Co., 29 NY2d 356, 361 [1972]).
(151 AD3d at 648).
Significantly — and unlike the instant matter where none of the parties are New York residents — six of the defendants in Norex  Leonard Blavatnik, Victor Vekselberg, Simon Kukes, Access Industries and Renova, Inc.  maintained New York residence. The trial court did not find this connection to New York sufficient because none of the defendants "that allegedly committed the actual tortious acts are residents of New York" and "[i]mportantly, [the plaintiff] Norex is also not a resident of New York" (48 Misc 3d 1226[A]). Thus, the trial court concluded this factor weighed in favor of dismissal (id.). In the instant matter, as discussed more fully below, the facts weigh heavier in favor of dismissal. 
A. Residence of the Parties
The residency of the parties in this case, as in Norex, supra, is a factor that weighs in support of dismissal on forum non conveniens. Although the Plaintiffs conduct business in New York, neither are New York entities and their registered headquarters are in Connecticut (NYSCEF Doc. No. 3, ¶¶ 9-10). And although the Plaintiffs' founder and principal, Vladimir Gusinski, asserts that he has lived mainly in the United States and Israel since 2000 and that his family resides in Greenwich, Connecticut, he is not a resident of New York and he owns property in London (NYSCEF Doc. No. 36, ¶ 3). The Plaintiffs do not address the residency of the parties, except to argue that residence is merely one factor in the overall analysis and except to the extent that Mr. Gusinski states that, "New York is the most convenient forum for me to testify in this case" (id.). Under these circumstances, it cannot be said that the Plaintiffs are residents of New York, whereas East-West is certainly a Luxembourg entity. 
B. New York Nexus
In Norex, supra, the trial court explained there was an insufficient nexus of the events complained of to the New York forum because "the location of the events giving rise to the transaction at issue occurred outside of New York" and the only "alleged connection to New York is that some Defendants 'participated and directed' the tortious conduct that occurred in Russia" from New York, "which is an insufficient connection with New York" (48 Misc 3d 1226[A]). The same is true here: the only connection asserted with New York in this globe-spanning action is that certain loan documents which were allegedly used as the tools of East-West's alleged attempt to gain control over the Library were negotiated by the Plaintiffs (but not East-West) in New York and funded in New York where the Library exists. New York courts "need not entertain causes of action lacking a substantial nexus with New York" (Martin v Mieth, 35 NY2d 414, 418 [1974]). The focus of a forum non conveniens inquiry is to ensure that the trial will be convenient and will serve the ends of justice (Globalvest Mgmt. Co., LP v Citibank N.A., 7 Misc 3d 1023[A] [dismissing action based on forum non conveniens where sole NY nexus alleged was defendant's direction of tortious conduct from NY). Trial of this action in New York based on the facts alleged herein simply is not required and, as discussed further below (Point D, infra), may involve a number of difficulties such as the inability to bring witnesses and documents across the globe to New York (id.). This factor weighs heavily in favor of dismissal (Norex, supra).
C. Burden on New York Courts
The applicability of foreign law is another consideration in a forum non conveniens analysis (see Shin-Etsu Chem. Co. v ICICI Bank Ltd., 9 AD3d 171, 178 [1st Dept 2004] [citations omitted]). In the Amended Complaint, the first and fifth causes of action expressly involve violations of Luxembourg law. At the outset, the court notes that there are at least three or four interlocking agreements at issue. In none of them did the parties negotiate for application of New York law or that disputes would be adjudicated in New York courts. Among certain Pledge Agreements that form the basis for the Plaintiffs' breach of contract claim, the relevant agreement with New Media Programming is governed by Cayman Islands law (NYSCEF Doc. No. 11, at 18, ¶ 20) and the relevant agreement with New Century Holdings Limited is governed by the law of Switzerland (NYSCEF Doc. No. 10, at 7, ¶ 3.9). The Plaintiffs also plead that East-West's conduct violated European Union banking regulations (NYSCEF Doc. No. 3, ¶¶ 7, 38, 40). Perhaps most importantly, in the Credit Agreement, i.e., the document that bears the closest relationship to East-West, the parties expressly agreed that even "non-contractual" obligations between the parties were governed by English law and subject to arbitration. Thus, the Plaintiffs had no expectation (and bargained for none) of being able to seek New York courts or New York law to adjudicate their dispute. This intentional and express choice by the parties as to non-contractual obligations (i.e., the gravamen of this lawsuit) weighs heavily when considering whether Plaintiffs should now be allowed to burden New York courts when they chose the exact opposite result when they made their deal with East-West. In short, it is curious that the Plaintiffs claim hardship when a ruling of forum non conveniens only places them in exactly the position they placed themselves in voluntarily under the Credit Agreement with East-West and where the principal of the Plaintiff owns property (albeit, perhaps not his residence). As a result, the application of the laws of England, Luxembourg, the Cayman Islands, and Switzerland in this case favors dismissal on forum non conveniens grounds (see Flame S.A. v Worldlink Intl. Holding, 107 AD3d 436, 438 [1st Dept 2013] [affirming the trial court's dismissal of the case for [*6]forum non conveniens, in part, because the court would have to apply the laws of Samoa, Hong Kong, and Canada]). 
To the extent that the Plaintiffs argue that New York law applies to its claims for tortious interference, East-West disagrees that this is the appropriate conclusion on choice of law principles (see Padula v Lilarn Props. Corp., 84 NY2d 519, 521 [1994] [citations omitted] [explaining that in context of tort law, New York uses interest analysis to determine which competing jurisdiction has the greater interest in having its law applied, which analysis requires consideration of: (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss]). Here, the record is not sufficiently developed to conduct a proper choice of law analysis. However, the court notes that the East-West's objections do not appear to be without merit given that the conduct underlying the claims for tortious interference involved East-West's purported interference with the proposed OTT project between NM Group and Sistema, as well as East-West's initiation of proceedings in London and Moscow that were allegedly commenced to reduce the value of the New Media Group (NYSCEF Doc. No. 3, ¶¶ 62-73). And, perhaps most importantly, as discussed above, inasmuch as the Credit Agreement itself provided that non-contractual disputes were to be governed by English law, it is peculiar that the Plaintiffs now argue that New York law should govern these very claims. Accordingly, this factor also weighs in favor of dismissal.
D. Hardship to East-West
East-West argues that litigation in New York also poses a special hardship because all its witnesses and documents are located overseas (NYSCEF Doc. No. 21, at 16-17). By way of example, East-West refers to the Amended Complaint, which identifies individuals who were allegedly involved in East-West and Sistema's scheme to seize the Library: Sistema representative Mr. Shebdurasulov, Sistema CEO Mr. Shamolin, and Sistema founder Mr. Yevtushenkov (NYSCEF Doc. No. 3, ¶¶ 32-39, 64). 
Although the Plaintiffs assert that East-West possesses the resources as an international bank, the court cannot entirely turn a blind eye to the hardship that would accrue to East-West, a foreign defendant, and its Russian parent, Sistema, in having witnesses travel overseas to participate in this New York litigation (see Metz v Davis Polk & Wardwell, 133 AD3d 501, 501 [1st Dept 2015] [recognizing hardship to defendants whose key witnesses were located in Hong Kong]). In fact, East-West's "likely inability" to compel "critical witnesses to testify in New York (or the cost of bringing willing witnesses)" is almost certain to "unfairly prejudice" its ability to defend against this action (Globalvest Mgmt. Co., L.P., 7 Misc 3d 1023[A] at *6). And, it is hard to understand why there would be any hardship to East-West or the Plaintiffs in not getting the law and being compelled to litigate in England, the very forum they bargained for. Indeed, given that the guarantors and East-West have already arbitrated issues in England, which East-West claims mirror the claims set forth in the Amended Complaint, it does not appear that litigating in England posses any real hardship to any of the parties. Accordingly, the potential burden of requiring East-West to litigate in New York also favors dismissal.
E. Location of Witnesses and Relevant Documents
The Plaintiffs argue that the majority of their non-party witnesses reside in New York or the US [*7]such that this factor supports a substantial nexus between New York and this action. In particular, the Plaintiffs identify three non-party witnesses that reside in New York: CFO of the New Media Group Chris Renaud, former President of Media Most International, Inc., Sergey Shestakov, and the Plaintiffs' contract lawyer (NYSCEF Doc. No. 27, at 6). The Plaintiffs also identify two non-party witnesses that reside in Washington, D.C. and New Jersey, respectively (id.). However, the record is silent as to how testimony from the majority of these individuals is relevant to the alleged scheme between East-West and Sistema. An affidavit from the Plaintiffs' counsel explains that Mr. Renaud worked extensively with East-West during the dispute (NYSCEF Doc. No. 28, ¶ 8), however, it is not clear how or to what extent the other individuals were involved in the alleged misconduct between the Plaintiffs, East-West, and Sistema as set forth in the Amended Complaint. Further, in accordance with the foregoing, East-West's non-party witnesses from Sistema are not located in New York.
To the extent that the Plaintiffs claim that the relevant documents, agreements, and license agreements governing the Library are stored in New York, given the allegations, it is not clear that the gravamen of the Amended Complaint involves the governing documents of the Library as the Amended Complaint involves improper acceleration of the credit facility and violations of the Pledge Agreements to gain control over the Library. In any event, East-West asserts that its records are located in Luxembourg. Accordingly, at best, the location of foreign non-party witnesses and documents is a neutral factor.
F. Alternative Forum
The availability of an alternative forum is not a precondition to dismissal under New York state law, but remains an important factor to consider (Islamic Republic, 62 NY2d at 481; Norex, 151 AD3d at 648). East-West proposes England and Luxembourg as available alternatives. The Plaintiffs assert that litigation overseas would be inconvenient where its witnesses and documents are not located in England or Luxembourg. However, the key witnesses and documents in this case are spread among the U.S., Luxembourg, England and Russia, such that there will inevitably be inconvenience to at least one, if not every, party when litigating in any given forum. Although litigation in Luxembourg may require that certain documents be translated into French, this is no different from the required translation of documents into English if a matter in a New York court concerns foreign parties.
The Plaintiffs also argue that they would be severely prejudiced by the lack of a trial by jury in both England and Luxembourg, but they fail to explain why this is so. To the extent that the Plaintiffs assert that New York provides full and open discovery procedures, there is no indication that the Plaintiffs would encounter discovery issues when litigating before an English court. Accordingly, England and Luxembourg are alternative fora for this dispute.
Ultimately, and most significantly, this case simply does not have a substantial nexus to New York. Although the Plaintiffs argue that the relevant agreements were negotiated by the Plaintiffs in New York and that certain witnesses, along with the Library, are located in New York, these factors are insufficient to demonstrate that the matter is tied to New York. The Pledge Agreements at issue provide that foreign law governs the obligations arising thereunder. Notably, none of the parties to the Pledge Agreements are New York corporations or even [*8]parties to this lawsuit other than East-West. The Plaintiffs are not New York residents, the court would be required to apply the laws of Luxembourg, the Cayman Islands, and Switzerland, East-West's non-party witnesses and documents are located overseas, and there exists an alternative forum for the Plaintiffs to bring their litigation. Under these circumstances, the balance of the factors on a forum non conveniens analysis favor dismissal.
Accordingly, it is
ORDERED that East-West's motion to dismiss is granted and the Amended Complaint is dismissed, and the Clerk is directed to enter judgment accordingly.
Dated: April 6, 2020