[777 NYS2d 69]

Shin-Etsu Chemical Co., Ltd., Respondent, v ICICI Bank Limited, Appellant.

First Department, May 18, 2004

## APPEARANCES OF COUNSEL

*Kelley Drye & Warren LLP* (*Jonathan K. Cooperman* and *Robert I. Steiner* of counsel), for appellant.

*Jones Day* (*Mark S. Mandel* and *Jennifer W. Cohen* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether Supreme Court, in denying a motion to dismiss on the ground of forum non conveniens, applied the proper standard, where neither party is a New York resident or domiciliary and none of the events giving rise to the lawsuit—an action against the issuer of a letter of credit for payment—occurred in New York, or even in the United States for that matter. Plaintiff is a Japanese corporation with its principal place of business in Tokyo. Defendant ICICI Bank Limited is an Indian banking institution with its principal place of business in India.

On or about November 18, 2000, plaintiff, a manufacturer of preform for fiber optic cable, entered into a long term sale and purchase agreement (five years) with Aksh Optifibre Limited, a nonparty Indian corporation engaged in the manufacture of fiber optic cable, with its principal place of business in Rajastan, India, to sell to Aksh 3000 kilograms of preform per month. The contract provided "[Aksh] shall notify [plaintiff] of the nominated carrier for the next month's shipment by the 15th day of the current month. If [Aksh] fails to notify [plaintiff] by such date, [plaintiff] may, at its sole discretion, select and nominate the carrier." The agreement required that payment be made through a revolving letter of credit, which, at the request of Aksh, ICICI issued on or about February 7, 2001 through its New Delhi branch. ICICI was not a party to the sales and purchase agreement.

Under the irrevocable letter of credit, ICICI was to pay plaintiff upon the presentation, in India, of conforming documents including, inter alia, a signed commercial invoice, a certificate showing that the goods were of Japanese origin and an airway bill issued by "M/S. MSAS Global Logistics K.K." Of the required conforming documents, only the airway bill is at issue. Aksh, through notices issued by the Bank of New York's Tokyo

branch, had the letter of credit subsequently amended at least 10 times, one of which changed the airway carrier from Global Logistics to Exel Japan Ltd. At plaintiff's request, Aksh again had the letter of credit amended on October 20, 2001 to provide that the airway bill be issued by "Exel Japan Limited, or its successor, if any." The word "successor" was added because the prior freight forwarder, M/S Global Logistics, merged with Exel. As a result, Aksh advised ICICI to amend the letter of credit to account for any other future mergers or asset sales.

At some point prior to July 10, 2002, Exel informed plaintiff that Aksh had notified it not to accept cargoes of preform pending further notice. On that date, plaintiff, the beneficiary under the letter of credit, faxed a letter to ICICI, advising it of a dispute it was having with Aksh, which, according to the letter, informed Exel, the nominated freight forwarder under the letter of credit, not to accept plaintiff's cargos of preform for shipment. As a result, plaintiff advised ICICI it intended to appoint a new freight forwarder, Unitrans, "as the successor freight forwarder in accordance with the terms of the referenced Letter of Credit and the underlying Long Term Sale and Purchase Agreement between [plaintiff] and AKSH." The letter further advised, "We expect ICICI . . . to honor a presentation under the Letter of Credit for such shipment [which] will occur on July 14, 2002. Please contact the undersigned immediately if you have any questions concerning this matter. Otherwise we will expect prompt payment upon presentation of the documents required under the Letter of Credit." An ICICI representative in New Delhi responded that plaintiff should take the matter of its appointment of Unitrans up with Aksh and that it would not accept a nomination that departed from the terms of the letter of credit. As the record shows, Unitrans was a different freight forwarder with no relationship to Exel.

ICICI contacted Aksh to ascertain whether it consented to payment if a discrepant shipper were named. Aksh would not consent. On July 31, 2002, plaintiff forwarded an airway bill to ICICI from Unitrans, signed by an unidentified individual whose signature was preceded by the typewritten words, "Unitrans Ltd. as agent of Air India Ltd., carrier and as successor of Exel Japan Limited." Since Aksh would not approve the discrepancy, ICICI notified plaintiff that it would be unable to make payment, pointing out that the airway bill was to be "issued by M/S Exel Japan Ltd. However, the same has been issued by Unitrans Ltd." In response, plaintiff renewed its demand for payment, claiming it had the right to appoint a successor to Exel.

After informal efforts to resolve the dispute proved unsuccessful, plaintiff commenced this action in Supreme Court, New York County. ICICI answered, asserting a general denial and various affirmative defenses, but not that of fraud. ICICI thereafter moved to dismiss on the ground of forum non conveniens, pointing out that all the documents relating to the letter of credit were kept at its New Delhi branch, that it takes 20 to 22 hours to fly from New Delhi to New York and that the determination to reject plaintiff's submission of documents was made in India. ICICI also tendered the affidavit of Aziz Mushabber Ahmadi, a former Chief Justice of India, explaining that India provides an adequate alternative forum. Ahmadi stated that the Indian Code of Civil Procedure had been amended in 1999 and 2002 in order to expedite the resolution of commercial matters. He expressed the opinion that Indian courts could dispose of a commercial case within a year.

In opposition, plaintiff submitted the affidavit of Bhupinder Nath Kirpal, also a former Chief Justice of India, who was of the opinion that, because of the huge backlog of existing cases, the fact that no preference is given to commercial cases or post-amendment cases and the shortage of judges, it would take the Delhi High Court at least 10 years to decide a case such as this. Plaintiff also cross-moved for summary judgment.

In reply, ICICI submitted another affidavit from Ahmadi, who, not surprisingly, disagreed with Kirpal, stating, "It is essentially the non-commercial causes . . . which get prolonged and which clog the calendar of cases"; implying that commercial cases can be "taken out of the queue" and "put on the fast track" and noting that, in his experience as a trial judge, most commercial cases were disposed of expeditiously. As he stated, "Even under the pre-amendment scenario, letter of credit disputes could end within a year, latest three years, if both parties consented to an early hearing." The shortage of judges, he noted, did not apply at the High Court level, where this suit would be handled.

In opposition to plaintiff's cross motion for summary judgment, ICICI submitted the affidavit of the chief manager of its New Delhi branch, who stated that in the banking industry the term "successor," when used in the context of a corporation, means "a company that subsumes another company as a result of a change in ownership or a transfer of corporate assets" and that Unitrans did not fit within this definition. ICICI submitted Indian precedent to support its interpretation of "successor."

In reply, plaintiff submitted another affidavit from Kirpal, distinguishing ICICI's precedents and stating that the term "successor" has various meanings in Indian law, depending on its use. Kirpal noted, "I have not located a single case where the term 'successor' has been used in the context of a banking transaction . . . similar to the kind in the present dispute, wherein the term 'successor' has been interpreted in the manner set forth by [ICICI]."

On April 7, 2003, some 3½ months after it had answered, ICICI moved to amend its answer to add the affirmative defense of fraud, asserting that plaintiff presented an airway bill deliberately misrepresenting that Unitrans Ltd. was the successor to Exel Japan Ltd.

Supreme Court denied ICICI's motion to dismiss, primarily because of the delays in the Indian court system. Acknowledging that the cause of action did not arise in New York, the court gave deference to plaintiff's choice of forum and noted the competence of New York courts to handle litigation involving letters of credit. It also found a sufficient nexus between ICICI and New York, presumably because ICICI's shares were traded on the New York Stock Exchange. The court rejected ICICI's argument that proceeding with the case in New York would impose a burden on witnesses. It also granted plaintiff's cross motion for summary judgment as to liability, finding that plaintiff's documents were conforming. In so ruling, it looked to the agreement between plaintiff and Aksh, not the letter of credit to which ICICI was a party, and found that, based on Aksh's failure to nominate a carrier by the 15th day of the preceding month, the agreement allowed plaintiff to appoint a freight forwarder other than Exel, which, the court determined, was the reason for the use of the word "successor" in the letter of credit. Thus, the court held, the word "successor" did not mean a legal successor. Finally, the court denied ICICI's motion to amend its answer. Forum non conveniens dismissal should have been granted.

While the disposition of a motion to dismiss on the basis of forum non conveniens is left to the sound discretion of the motion court, this Court is "not limited to deciding that the nisi prius court abused its discretion, but may exercise such discretion independently" (*Highgate Pictures v De Paul*, 153 AD2d 126, 130 [1990]; *see also Holness v Maritime Overseas Corp.*, 251 AD2d 220, 225 [1998]). The factors to be considered on such a motion include:

"the burden on the New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit . . . . The court may also consider that both parties to the action are nonresidents . . . and that the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction . . . . No one factor is controlling" (*Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 479 [1984], *cert denied* 469 US 1108 [1985] [citations omitted]).

While acknowledging that it "must analyze a number of factors," Supreme Court relied only on its finding that India is not an adequate forum, which is not dispositive, and the fact that ICICI is subject to New York's jurisdiction, which is not even a relevant factor, since on a motion to dismiss on the ground of forum non conveniens, jurisdiction over the defendant is presumed (*see Islamic Republic of Iran v Pahlavi, supra*). It ignored all of the other requisite factors, including that there be some factual connection between New York and the dispute (*see id.* at 483). "[O]ur courts should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York" (*Silver v Great Am. Ins. Co.*, 29 NY2d 356, 361 [1972]). The present dispute has no substantial nexus to New York.

While it is true that this is a relatively uncomplicated case and hardly the type to impose an undue burden on the New York courts, the key issue being whether the airway bill issued by "Unitrans Ltd. . . . as successor of Exel Japan Limited" complied with the letter of credit requiring an airway bill issued by "Exel Japan Limited, or its successor, if any," resolution of the issue will likely require consideration of Indian law, which, on this record, is in dispute. Thus, contrary to the motion court's finding, it is unlikely that the issue can be resolved without the necessity of calling witnesses and solely on the basis of documentary evidence. Although the letter of credit is governed by the Uniform Customs and Practice for Documentary Credits (UCP), the UCP does not cover every contingency and the meaning of the letter's terms will have to be determined by reference to the law governing the transaction. Since the letter of credit was issued there, India is considered the place of performance and its law will determine the meaning of "or its successor, if any" (*see e.g. Canadian Imperial Bank of Commerce v Pamukbank Tas*, 166 Misc 2d 647, 651-652, 654 [1994]).

Although we do not reach the merits of the case, we note that Supreme Court, in reaching its determination as to the meaning of "successor," relied upon the provisions of the separate and independent underlying agreement between plaintiff and Aksh, to which ICICI was not a party. The court erred in reading and interpreting the letter of credit in the context of that contract. While the plain language of the plaintiff/Aksh agreement did allow plaintiff the right to nominate a freight forwarder under certain circumstances, the plain language of the letter of credit does not afford such a right. In this regard, it is important to note, the court did not have before it the underlying dispute between plaintiff and Aksh. Plaintiff's grievance, it would seem, is against Aksh, not ICICI.

It is well established that a letter of credit is separate and independent from the underlying contract between the beneficiary and the issuing bank's customer (*see Mutual Export Corp. v Westpac Banking Corp.*, 983 F2d 420 [2d Cir 1993]). "In particular, letters of credit must be interpreted on their face, independent of other contracts and the underlying transaction" (*id.* at 423). In fact, article 3 (a) of the UCP provides, "Credits, by their nature, are separate transactions from the sales or other contract(s) on which they may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract (s) is included in the Credit." This principle of independence is especially relevant where, as here, the letter of credit explicitly provided that it would be governed by the UCP, an "internationally accepted codification of banking practice and custom" (*Kools v Citibank, N.A.*, 872 F Supp 67, 71 [1995]) the provisions of which, when incorporated in a contract, govern interpretation of the letter of credit and even displace statutory laws in conflict with its provisions (*see id.*).

While, as Supreme Court held, plaintiff had the right, pursuant to the underlying contract, to select any freight forwarder in the event Aksh failed to provide a timely nomination, the letter of credit at issue, as noted, does not so provide. Rather, it explicitly specifies the freight forwarder to be used, expressly requiring an airway bill issued by "Exel Japan Limited, or its successor, if any." Strict compliance with that term is required.

Since resolution of the conformity of the airway bill will require witnesses, the location of the witnesses and any relevant documents becomes an important factor in determining the motion (*see World Point Trading PTE. v Credito Italiano,*

225 AD2d 153, 161 [1996]). The complete written record of this transaction is located in India, as are all documents and correspondence. Any witness with personal knowledge of the letter of credit is located overseas.

Because of its mistaken view that the case was subject to summary disposition, the motion court failed to consider the burden of having to interpret Indian banking law. The applicability of foreign law is an important consideration in determining a forum non conveniens motion (*Hormel Intl. Corp. v Arthur Andersen & Co.*, 55 AD2d 905, 906 [1977]) and weighs in favor of dismissal (*see e.g. Gulf Oil Corp. v Gilbert*, 330 US 501, 509 [1947]; *Bewers v American Home Prods. Corp.*, 99 AD2d 949, 950 [1984], *affd* 64 NY2d 630 [1984]), given that expert testimony is essential (*Neuter, Ltd. v Citibank, N.A.*, 239 AD2d 213 [1997]). And, while, in support of its ruling, Supreme Court noted the competence of New York courts in letter of credit cases, this Court has not hesitated to dismiss, on the ground of forum non conveniens, letter of credit cases having little to do with New York (*see e.g. Young-Bae Park v Kredietbank N.V.*, 271 AD2d 360 [2000]; *World Point Trading PTE. v Credito Italiano, supra*).

Supreme Court also failed to defer to India's interest in resolving its own affairs. New York courts have recognized that where a foreign forum has a substantial interest in adjudicating an action, such interest is a factor weighing in favor of dismissal (*see Europe & Overseas Commodity Traders, S.A. v Banque Paribas London*, 940 F Supp 528, 539 [1996], *affd* 147 F3d 118 [1998], *cert denied* 525 US 1139 [1999]). As the affidavit of former Chief Justice Ahmadi noted, Indian courts are keenly interested in governing the affairs of its financial institutions to insure uniformity and consistency in the processing of financial transactions and in the interpretation of Indian banking statutes and laws.

The only proper forum non conveniens factor considered by the Supreme Court was whether India provided an adequate alternative forum, the availability of which, although an important consideration, is not, contrary to the court's ruling, a precondition to dismissal on forum non conveniens grounds (*Islamic Republic of Iran v Pahlavi, supra*). "Ordinarily, [the] requirement [of an adequate alternative forum] will be satisfied when the defendant is 'amenable to process' in the other jurisdiction . . . . [However,] dismissal would not be appropriate where the alternative forum does not permit litigation of the

subject matter of the dispute" (*Piper Aircraft Co. v Reyno*, 454 US 235, 254 n 22 [1981]). Here, it is undisputed that ICICI can be sued in India and that its courts permit litigation of letter of credit disputes. According to plaintiff's expert, however, it would take at least 10 years for this case to be tried;* according to ICICI's expert, it would take one to three years.

In ruling that India is not an adequate forum because of the delays in its court system, Supreme Court relied on *Bhatnagar v Surrendra Overseas Ltd.* (52 F3d 1220 [3d Cir 1995]), which found that a delay of 15 to 20 years rendered India an inadequate alternate forum (*id.* at 1227-1228). *Bhatnagar*, however, was decided before either the 1999 or 2002 amendment to the Indian Code of Civil Procedure, and was a personal injury, not commercial, case. According to ICICI's expert, it is the noncommercial cases that clog the Indian court calendars. Moreover, *Bhatnagar* had a greater nexus to the United States than does the instant case: the plaintiff received medical treatment in this country. Thus, American doctors would have to testify about the nature and extent of the plaintiff's injuries (*id.* at 1223-1224). In *Kashyap v Babcock & Wilcox* (268 AD2d 348 [2000]), a post-*Bhatnagar* case, this Court found that India was an adequate alternative forum. Although the reported decision does not mention delay, the plaintiff did argue that it would take 10 years to obtain a judgment in India.

Moreover, it should be noted that unlike the federal precedents, which require an alternate forum for a non conveniens dismissal (*see e.g. Piper Aircraft Co. v Reyno, supra*), New York's do not (*see e.g. Islamic Republic of Iran v Pahlavi, supra* at 478, 480-481, 484; *A & M Exports v Meridien Intl. Bank*, 207 AD2d 741 [1994]). In *A & M*, involving the dishonoring of drafts, the plaintiff claimed that Liberia was "not a viable alternative forum" (*id.* at 742). This Court held that even if this were so, it was "not dispositive given a New York connection that at best is only marginal" (*id.*).

While it is true, as plaintiff argues, that in *Highgate Pictures v De Paul* (*supra*), this Court stated: "The failure of the [motion] court to ensure the existence of an alternative forum in this straight-forward case represents a fundamental failure to implement basic forum non conveniens policy, to do justice and

---

* Supreme Court should not have considered the additional 5 to 10 years that, according to plaintiff's expert, an appeal would take (*see Moscovits v Magyar Cukor Rt.*, 2001 WL 767004, *4 , 2001 US Dist LEXIS 9252, *11 [SD NY, July 9, 2001], *affd* 34 Fed Appx 24 [2d Cir 2002]).

further fairness and convenience" (*id.* at 129), the Court in *Highgate* conceded that under *Islamic Republic of Iran*, the availability of an alternate forum is "no longer controlling" (*id.* at 128). It distinguished *Islamic Republic* since there, as in this case, neither party was a New York resident (*id.* at 129). In *Highgate*, both the plaintiff and defendant were New York residents. If that difference were not enough to distinguish this case from *Highgate*, here, there is an alternative forum, one that is more convenient to the witnesses (*see id.*).

In light of the foregoing, we need not reach the merits of ICICI's motion to amend its answer. We have examined the other issues raised and find that they are without merit or irrelevant to the forum non conveniens issue.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered August 11, 2003, which, inter alia, denied defendant ICICI Bank Limited's motion to dismiss the complaint for forum non conveniens, and granted plaintiff's cross motion for summary judgment, should be modified, on the law, the facts and in the exercise of discretion, the motion to dismiss granted on condition that defendant ICICI waive any statute of limitations defense and submit to the personal jurisdiction of the courts of India, the cross motion denied, and, except as thus modified, affirmed, with costs and disbursements to defendant.

NARDELLI, J.P., ANDRIAS and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered August 11, 2003, modified, on the law, the facts and in the exercise of discretion, the motion to dismiss the complaint granted on condition that defendant ICICI waive any statute of limitations defense and submit to the personal jurisdiction of the courts of India, the cross motion for summary judgment denied, and, except as thus modified, affirmed, with costs and disbursements to defendant.