■ THOMAS BOYLE et al., Appellants, v STARWOOD HOTELS & RESORTS WORLDWIDE, INC., Respondent. [973 NYS2d 728]—

In an action, inter alia, to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Westchester County (Walker, J.), entered September 21, 2011, which granted the defendant's motion to dismiss the action on the ground of forum non conveniens pursuant to CPLR 327 (a).

Ordered that the order is modified, on the facts and in the exercise of discretion, by adding a provision thereto conditioning the grant of the defendant's motion on the defendant stipulating (1) to accept service of process in a new action commenced by the plaintiffs in the United Kingdom, France, or the United Arab Emirates upon the same causes of action as those asserted in the instant complaint, or, in the alternative, at the choice of the individual plaintiffs, to accept service of process in a new action or actions commenced separately by the plaintiffs in the United Kingdom, France, or the United Arab Emirates upon the same causes of action as those asserted separately on behalf of the individual plaintiffs in the instant complaint, and (2) to waive any defenses, including that of the statute of limitations, which were not available in New York at the time of the commencement of this action, all provided that the new action

or actions are commenced within 90 days after service of the stipulation upon the plaintiffs; as so modified, the order is affirmed, with costs payable to the defendant; in the event that the defendant fails to so stipulate within 60 days after service upon it of a copy of this decision and order, then the order is reversed, on the facts and in the exercise of discretion, with costs payable to the plaintiffs, and the motion is denied.

The doctrine of forum non conveniens permits a court to stay or dismiss an action when, although it may have jurisdiction over a claim, the court determines that "in the interest of substantial justice the action should be heard in another forum" (CPLR 327 [a]; *see Koskar v Ford Motor Co.*, 84 AD3d 1317, 1317-1318 [2011]). A defendant bears the burden on a motion to dismiss on the ground of forum non conveniens to "demonstrate relevant private or public interest factors which militate against accepting the litigation" (*Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 479 [1984], *cert denied* 469 US 1108 [1985]; *Koskar v Ford Motor Co.*, 84 AD3d at 1318 ). "On such a motion, the Supreme Court is to weigh the parties' residencies, the location of the witnesses and any hardship caused by the choice of forum, the availability of an alternative forum, the situs of the action, and the burden on the New York court system" (*Tiger Sourcing [HK] Ltd. v GMAC Commercial Fin. Corporation-Can.*, 66 AD3d 1002, 1003 [2009]; *see Koskar v Ford Motor Co.*, 84 AD3d at 1318). "No one factor is dispositive" (*Tiger Sourcing [HK] Ltd. v GMAC Commercial Fin. Corporation-Can.*, 66 AD3d at 1003; *see Islamic Republic of Iran v Pahlavi*, 62 NY2d at 479). "The Supreme Court's determination should not be disturbed unless the court improvidently exercised its discretion or failed to consider the relevant factors" (*Koskar v Ford Motor Co.*, 84 AD3d at 1318; *see Islamic Republic of Iran v Pahlavi*, 62 NY2d at 479).

Here, the plaintiff Thomas Boyle is a resident of the United Kingdom, and the plaintiff Elodie Nogues is resident of France. The complaint alleges that Boyle and Nogues contracted Legionnaire's disease during separate stays at a hotel located in Dubai, United Arab Emirates, which is owned by the defendant. The complaint seeks to recover damages under theories of breach of contract and negligence, and asserts a derivative cause of action on behalf of Thomas Boyle's wife, the plaintiff Catherine Boyle, who is also a resident of the United Kingdom. The defendant is a Maryland corporation and is alleged to have its principal place of business in White Plains, the sole connection in this case to the State of New York. Under the circumstances of this case, the Supreme Court, considering all of the relevant and appropri-

ate factors, providently exercised its discretion in granting the defendant's motion to dismiss the action on the ground of forum non conveniens pursuant to CPLR 327 (a) (*see Koskar v Ford Motor Co.*, 84 AD3d at 1318; *Tiger Sourcing [HK] Ltd. v GMAC Commercial Fin. Corporation-Can.*, 66 AD3d at 1003).

However, in order to assure the availability of a forum for the action, the dismissal must be conditioned upon the defendant stipulating to waive jurisdictional and statute of limitations defenses in the United Kingdom, France, and the United Arab Emirates, as indicated herein (*see* CPLR 327 [a]; *Turay v Beam Bros. Trucking, Inc.*, 61 AD3d 964, 967 [2009]). Dillon, J.P., Chambers and Roman, JJ., concur.

Austin, J., dissents, and votes to reverse the order and deny the defendant's motion, with the following memorandum:

On this appeal, the plaintiffs argue that the Supreme Court improvidently exercised its discretion in granting the defendant's motion to dismiss the action on the ground of forum non conveniens. The majority modifies the order only to the extent of conditioning the dismissal of the action upon the defendant stipulating to accept service of process in a new action commenced collectively by the plaintiffs in the United Kingdom (hereinafter the UK), France, or the United Arab Emirates (hereinafter the UAE), or separate actions commenced individually by the plaintiffs in any of those jurisdictions. Inasmuch as there does not appear to be a viable alternate jurisdiction in which the plaintiffs can fairly litigate and the solution offered by the majority appears to be illusory, I respectfully disagree with the majority and vote to reverse.

In determining a motion to dismiss based upon forum non conveniens, the court must weigh various factors which include: (1) the residency of the parties; (2) the potential hardship to proposed witnesses, "including, especially, nonparty witnesses"; (3) the availability of an alternative forum; (4) the situs of the actionable events; and (5) the burden which will be imposed upon the New York courts (*Matter of OxyContin II*, 76 AD3d 1019, 1021 [2010] [internal quotation marks omitted]; *Jackam v Nature's Bounty, Inc.*, 70 AD3d 1000, 1001 [2010] [internal quotation marks omitted]; *Turay v Beam Bros. Trucking, Inc.*, 61 AD3d 964, 966 [2009]). While there is " 'no single factor controlling' " (*Smolik v Turner Constr. Co.*, 48 AD3d 452, 453 [2008], quoting *Kefalas v Kontogiannis*, 44 AD3d 624, 625 [2007]), I find that the absence of a meaningful, viable alternate forum for these plaintiffs to fully and fairly adjudicate their claims to be most compelling and should have resulted in the Supreme Court denying the defendant's motion to dismiss this action on the ground of forum non conveniens.

On January 30, 2009, a world-renowned cricket statistician and commentator, William Frindall, died of Legionnaire's disease less than two weeks after his stay at the Westin Dubai, a hotel located in the UAE that is owned by the defendant. There is no dispute that the outbreak of Legionnaire's disease occurred at the Westin Dubai and that the plaintiffs contracted it there.

The defendant, Starwood Hotels & Resorts Worldwide, Inc., a Maryland corporation, is one of the world's largest hotel companies and has its global headquarters located in White Plains, New York. As the parent of Westin Hotels & Resorts, the defendant publically associates the Westin Dubai with the Westin brand and its own reputation. In this way, hotel guests reasonably expect that the defendant, Westin, and its employees are a unified, interconnected, and internationally reputable family of sanitary, luxury hotels.

The defendant monitored this outbreak from its White Plains headquarters. In February 2009, it responded to concerned travelers by explaining that the Westin Dubai was conducting an investigation and was supplementing its standard disinfection program by treating all of the hotel's water systems under the supervision of an environmental health expert from its Westchester headquarters.

Contemporaneous with the media attention that followed the news of Frindall's death and the deadly outbreak of Legionnaire's disease at the Westin Dubai, hotel guests (and now plaintiffs) Thomas Boyle, a citizen of the UK, and Elodie Nogues, a citizen of France, who had each visited the Westin Dubai during the beginning of 2009, commenced an action to recover damages for negligence and breach of contract against the defendant in the United States District Court for the Southern District of New York. Each alleged significant health problems directly linked to their contraction of the disease during their respective stays at the Westin Dubai hotel. Thomas Boyle's wife, Catherine Boyle, a resident of the UK, was also named as a plaintiff in this action seeking to recover damages on her derivative claim (hereinafter, together with Thomas Boyle, the Boyle plaintiffs).

The District Court dismissed that action without prejudice due to lack of subject matter jurisdiction. Thereafter, this action was commenced in the Supreme Court, Westchester County. Venue was based upon the defendant's corporate headquarters being located in White Plains (*see* CPLR 503 [c]).

The defendant moved to dismiss the action on the ground of forum non conveniens pursuant to CPLR 327 (a). The Supreme

Court unconditionally granted the motion to dismiss. That determination is the subject of this appeal.

Even though "nonresidents are permitted to enter New York courts to litigate their disputes as a matter of comity," the doctrine of forum non conveniens permits a court to stay or dismiss an action "where it is determined that the action, although jurisdictionally sound, would be better adjudicated elsewhere" (*Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 478-479 [1984], *cert denied* 469 US 1108 [1985]; *see generally* Siegel, NY Prac § 28 [5th ed]). The doctrine is based largely on public policy considerations, such that, even where no prohibition exists against maintaining a particular action in New York, our courts should not be obligated "to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York" (*Silver v Great Am. Ins. Co.*, 29 NY2d 356, 361 [1972]; *see Intertec Contr. A/S v Turner Steiner Intl., S.A.*, 6 AD3d 1,4 [2004]; *see also Turay v Beam Bros. Trucking, Inc.*, 61 AD3d at 966).

CPLR 327 (a) codifies that doctrine, providing that: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."

When a motion on the ground of forum non conveniens is made, the burden rests upon the defendant challenging the New York forum to "demonstrate relevant private or public interest factors which militate against accepting the litigation" here (*Islamic Republic of Iran v Pahlavi*, 62 NY2d at 479; *see Smolik v Turner Constr. Co.*, 48 AD3d at 453; *Stravalle v Land Cargo, Inc.*, 39 AD3d 735, 736 [2007]; *Kastendieck v Kastendieck*, 191 AD2d 328 [1993]; *see generally Piper Aircraft Co. v Reyno*, 454 US 235 [1981]). The Court of Appeals has described the undertaking as a defendant's "heavy burden of demonstrating that the forum chosen by [the plaintiff] is an inappropriate one" (*Banco Ambrosiano v Artoc Bank & Trust*, 62 NY2d 65, 74 [1984]; *see Anagnostou v Stifel*, 204 AD2d 61, 61 [1994]; *see also Yoshida Print. Co. v Aiba*, 213 AD2d 275, 275 [1995]). On this record, the defendant has not met its "heavy burden."

"A motion to dismiss pursuant to CPLR 327 (a) on the ground of forum non conveniens is addressed to the sound discretion of the Supreme Court, and the resulting determination will not be set aside absent an improvident exercise of that discretion or a failure by the Supreme Court to consider the relevant factors"

(*Yun Ra v Widrow*, 82 AD3d 974, 974 [2011]; *see Smolik v Turner Constr. Co.*, 48 AD3d at 453-454; *Brinson v Chrysler Fin.*, 43 AD3d 846, 848 [2007]). Thus, on appeal, this Court may set aside a determination with respect to a motion to dismiss on the ground of forum non conveniens where the relevant factors are indeed considered, but weighed "improvidently" by the Supreme Court. Such is the case here.

While addressing the relevant factors in determining this motion, the Supreme Court considered and apparently relied upon broad and unsubstantiated assertions by the defendant's vice president and associate general counsel that unnamed witnesses and, "[u]pon information and belief," unspecified documents, were located overseas and would be unavailable by subpoena. Further, the court presumed that adequate alternative forums existed in France, the UAE, and the UK. Finally, the court found that there was no substantial nexus between New York and the plaintiffs' claims.

"[R]elief [pursuant to CPLR 327] should be granted when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties" (*Silver v Great Am. Ins. Co.*, 29 NY2d at 361). However, the analysis "should turn on considerations of justice, fairness and convenience and not solely on the residence of one of the parties" (*id.*; *see Intertec Contr. A/S v Turner Steiner Intl., S.A.*, 6 AD3d at 4 [forum non conveniens is a "highly flexible concept" to promote "the equitable principles of justice, fairness and convenience"]; *see also Turay v Beam Bros. Trucking, Inc.*, 61 AD3d at 966). "An essential determination for a *forum non conveniens* inquiry is whether there is an adequate alternative forum to resolve the dispute" (*Weltover, Inc. v Republic of Argentina*, 753 F Supp 1201, 1209 [SD NY 1991]). However, "[a] defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable" (*Iragorri v United Tech. Corp.*, 274 F3d 65, 74-75 [2d Cir 2001]). " 'Generally, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed' " (*OrthoTec, LLC v Healthpoint Capital, LLC*, 84 AD3d 702, 702 [2011], quoting *Anagnostou v Stifel*, 204 AD2d at 61; *see* CPLR 503 [c]; 509).

Forum non conveniens analysis requires—and, indeed, is premised upon—the defendant's proof of the existence of a particular viable alternative forum (*see Piper Aircraft Co. v Reyno*, 454 US at 254 n 22). "At the outset of any *forum non conveni-*

*ens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, [as suggested by the majority,] this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction. [*Gulf Oil Corp. v*] *Gilbert*, 330 US [501,] 506-507 . . . In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied" (*id.*).

Here, the Supreme Court failed to consider the actual lack of available alternate forums. Analysis of the "availability" of an alternate forum must include whether the plaintiff would be prejudiced procedurally or substantively by being forced to litigate in that other forum (*see Neville v Anglo Am. Mgt. Corp.*, 191 AD2d 240, 242-243 [1993] [the plaintiffs would be prejudiced by having to litigate in England as opposed to New York due to the prohibition on contingency fees and the unavailability of jury trials]; *see also Gyenes v Zionist Org. of Am.*, 169 AD2d 451, 452 [1991] ["there is a potential hardship to plaintiffs if they are required to litigate the matter in Israel where there is no right to trial by jury"]). The plaintiffs offered evidence in the form of an expert affidavit from an attorney-at-law registered with the Paris bar in France that the Boyle plaintiffs, as residents of the UK, would not be permitted to litigate this action against the defendant, a New York corporation, in France. Further, the expert explained that due to the constraints of article 14 of the Civil Code of France, even Nogues, a French citizen, likely could not invoke the jurisdiction of the French courts because she commenced this action here first.

With regard to the UAE as an alternate forum, certain procedural and substantive features available here, such as loss of consortium claims, jury trials, contingency fees, discovery procedures, cross-examination, and the ability to subpoena witnesses and documents, are not available there. In addition, the plaintiffs cite to, and the Supreme Court relied upon, an analysis of the UAE court system issued by the United States Department of State, which suggests a real concern that the UAE courts are not independent. The Department of State's analysis notes that, in practice, the UAE's courts' decisions "remain[ ] subject to review by the political leadership and suffer[ ] greatly from nepotism" (United Arab Emirates, www.state.gov/documents/organization/160079.pdf at 5 [accessed September 19, 2013]). Moreover, Sheikh Ahmed bin Saeed Al Maktoum, a member of the Dubai royal family, is also an owner of the Westin Hotel in Dubai. This fact is disconcerting given the Department of State's analysis that, due to nepotism in the UAE court

system, "[t]here [is] no functional separation between the executive [monarchy] and judicial branches" (id.).

The defendant contends that the matter should be litigated in Dubai since the UAE has a "formidable" interest in this litigation because the injury occurred there and due to Dubai's desire to maintain its stature in the tourism industry. However, such a conclusory contention does nothing to assuage the concerns identified by the Department of State.

In addition to the concern as to whether the plaintiffs could receive a fair trial before an independent judiciary in the UAE, the plaintiffs presented evidence showing that there are also procedural and substantive hardships associated with litigating in the UAE, such as the lack of mandatory discovery in the UAE. Further, it appears that a plaintiff cannot bring a claim in the UAE under both contract and tort theories of recovery.

With regard to the UK, the plaintiffs presented evidence in the form of an expert affidavit from a solicitor in the UK that the UK would not be an available forum since the defendant is a United States corporation and the alleged tortious acts and omissions occurred outside of the UK. Moreover, the plaintiffs demonstrated, through the expert's affidavit, that, even if Thomas Boyle could litigate his claims in the UK, Nogues would not be able to avail herself of the jurisdiction of the UK courts and Catherine Boyle could not pursue her derivative claim. While it is possible, in light of the conditions placed upon the dismissal by the majority, that the UK could be an available forum if a British court finds that the parties have agreed to submit to jurisdiction in the UK (see Council Regulation [EC] No. 44/2001 of 22 December 2000 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters, hereinafter Brussels Regulation, arts 4 [1]; 23 [1]; Ministry of Justice, CPR part 6 § 6.33 [2] [b] [iii]), such a contention has not been demonstrated on this record and remains conjecture, at best.

Thus, two of the alternate forums, the UK and France, are not amenable to entertaining jurisdiction of this matter as to one or both parties (see e.g. Shin-Etsu Chem. Co., Ltd. v ICICI Bank Ltd., 9 AD3d 171, 179 [2004]). Further, it is highly questionable whether the remaining potential alternate forum, the UAE, could adequately and fairly adjudicate the plaintiffs' claims (see Intertec Contr. A/S v Turner Steiner Intl., S.A., 6 AD3d at 5 [political turmoil and civil war in Sri Lanka, the situs of the contested construction project, rendered that alternate forum unavailable]). While all of the potential prejudice may not ultimately come to pass, it must weigh against dismissal, es-

pecially in light of the fact that the defendant is headquartered in New York and cannot claim surprise that it would be sued in our courts.

The Supreme Court's determination that New York was an inconvenient forum, the basis for its grant of the defendant's motion to dismiss the action, was the result of an improvident exercise of discretion and the failure to properly weigh the key factors required in determining the motion.

The remedy adopted by the majority, in their modification of the Supreme Court's dismissal of this action, gives the plaintiffs the opportunity to litigate in the UK, France, or the UAE by imposing the condition that the defendant not raise jurisdictional or statute of limitations defenses in the new forum. Offering such options to the plaintiffs is problematic and, based on this record, illusory. Neither France nor the UK would give the plaintiffs the opportunity to litigate together. While the UAE would allow the plaintiffs to litigate in the same forum, their ability to litigate in a fair and impartial forum would be greatly curtailed. Thus, the parties are left to fend for themselves in disparate jurisdictions, if the courthouse doors are even open to them, with procedures and available remedies different from those available in our courts.

Such a scenario leaves these plaintiffs between a rock and a hard place, since they seem destined to realize potentially different, inconsistent results in France and the UK, or a seemingly assured unfair result in the UAE, as reported by the Department of State. Given that the defendant has not met its burden of establishing the viability of any of the alternate jurisdictions which would satisfy our notion of fairness and justice, I cannot accept a finding that any of the alternate jurisdictions are places where the plaintiffs' claims can be "better adjudicated" (*Islamic Republic of Iran v Pahlavi*, 62 NY2d at 479), or where the plaintiffs can expect "justice, fairness and convenience" (*Intertec Contr. A/S v Turner Steiner Intl., S.A.*, 6 AD3d at 4).

Looking beyond the question of the availability of a viable alternate forum, application of other relevant factors militate in favor of reversal. The plaintiffs have each pursued a difficult and expensive process by litigating in New York. Their alleged injuries occurred in Dubai. For the most part, they received medical treatment in their respective home countries. Yet, by bringing their claims to be adjudicated here, they have implicitly consented to be bound by New York's discovery rules and procedures. They should expect treatment no different from that accorded to any other litigant—domestic or foreign—by our courts.

On the other hand, the defendant is based in Westchester County. As the forum non conveniens dismissal motion suggests, the defendant concedes that this action was properly venued but that it is not a convenient forum. Such an argument is not supported by a listing of affected, nonparty witnesses (*see Chimarios v Duhl*, 152 AD2d 508, 509 [1989] ["(a)n attorney's affirmation which fails to set forth the names and addresses of material witnesses who reside in a different county from where the action arose will not support a motion for change of venue"]; *Boriskin v Long Is. Jewish-Hillside Med. Ctr., S. Shore Div.*, 85 AD2d 523, 523 [1981] ["attorney's affirmations in support of the change of venue are inadequate in making the case for the convenience of witnesses. The names and addresses of those prospective witnesses whose convenience would be served, as well as the nature of their testimony, is nowhere indicated"]). In addition, it cannot be ignored that access to foreign witnesses is readily available and affordable via such Internet services as Skype.

Likewise, the claimed unavailability of relevant documents for the defense of this action rings hollow. Today, we have the ability to digitally locate and transmit thousands of pages of documents around the world in the blink of an eye. Moreover, the defendant's investigation of the Legionnaire's disease outbreak in February 2009 makes any perceived prejudice related to document discovery, which is no doubt stored and accessible through its Westchester County headquarters, remote.

Finally, it is difficult to fathom how our New York courts would be burdened by litigating this matter here. Indeed, our courts frequently hear and determine matters applying the law of foreign jurisdictions and, thus, this cannot be considered an overwhelming burden upon our judiciary (*see e.g. Intertec Contr. A/S v Turner Steiner Intl., S.A.*, 6 AD3d at 3 [Sri Lanka]; *Yoshida Print. Co. v Aiba*, 213 AD2d 275 [1995] [Japan]; *Anagnostou v Stifel*, 204 AD2d at 62 [Greece]; *Pentifallo v Hilton of Panama*, 86 AD2d 583 [1982] [Greece]; *see also Bigio v Coca-Cola Co.*, 448 F3d 176, 179 [2d Cir 2006] [Egypt]; *United States v Schultz*, 333 F3d 393 [2d Cir 2003] [Egypt]; *Karaha Bodas Co., LLC v Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ["Pertamina"]*, 313 F3d 70 [2d Cir 2002] [Indonesia]). Thus, "this is seldom a serious concern" (Vincent C. Alexander, Practice Commentaries, *McKinney's Cons Laws of NY*, Book 7B, CPLR C327:2).

Consequently, the defendant failed to meet its "heavy burden" of establishing that New York is an inconvenient forum with regard to most, if not all, of the various factors to be considered

on its motion. Accordingly, I respectfully dissent and vote to reverse the order and deny the defendant's motion.