OPINION OF THE COURT
Debra A. James, J.
In this declaratory judgment action, defendants Steven Donziger, a New York attorney (Donziger), The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC (collectively the Donziger defendants) move, pursuant to CPLR 327, to dismiss this action based on forum non conveniens or, in the alternative, to dismiss pursuant to CPLR 3211 (a) (7) and (10) for failure to state a cause of action or failure to join a necessary party.
This lawsuit has, as its genesis, an $18.2 billion judgment (the Lago Agrio judgment) obtained in Ecuador by a group of indigenous Ecuadorians known as the Lago Agrio plaintiffs (LAPs) against Chevron Corporation (the Lago Agrio litigation). In that litigation, the Ecuadorian courts found that Chevron’s predecessor Texaco and Texaco’s petroleum operation in Ecuador had caused damage to both the environment and the Ecuadorian people in violation of the Environmental Management Act of 1999. The Lago Agrio judgment awarded $8.646 billion in remediation damages and another $8.646 billion in punitive damages which monies were to be administered by a trust with defendant Frente De Defensa La Amazonia, also known as Amazon Defense Front or Amazon Defense Coalition (ADF), named as trustee.
This action seeks a declaration that the Huaorani plaintiffs, members of a group of indigenous Ecuadorians, are entitled to a *536 proportionate share of the Lago Agrio judgment, and an accounting of the allocation of the judgment. This lawsuit also asserts claims against the Donziger defendants and ADF for breach of fiduciary duty and unjust enrichment and it demands the imposition of a constructive trust. Broadly speaking, plaintiffs allege that Donziger and the ADF are seeking complete control of the proceeds of the Lago Agrio litigation, for their own benefit and to the detriment of the Huaorani.
According to the complaint, plaintiffs are members of the Huaorani people, an indigenous people and minority group in the Amazon region of Ecuador. The Huaorani are one of five groups of indigenous people who were harmed by Texaco’s petroleum activities in the Amazon region of Ecuador.
Defendant ADF is a nonprofit organization that allegedly brought suit on behalf of plaintiffs, and all the other indigenous people who were harmed by Texaco’s petroleum activities in Ecuador. Plaintiffs allege that the Donziger defendants have also claimed to represent all of the indigenous people, including plaintiffs and other Huaorani, in activities related to the Lago Agrio litigation. However, it is plaintiffs’ position that plaintiffs never authorized such representation and that there is no written retainer agreement, nor any other agreement, which sets forth Donziger or ADF’s obligations to plaintiffs in connection with the Lago Agrio litigation. Nevertheless, plaintiffs allege that as a result of Donziger’s and ADF’s representations that Donziger is counsel for plaintiffs in the Lago Agrio litigation and that ADF brought the Lago Agrio litigation on behalf of all of the Ecuadorian people harmed by Texaco’s operations, including the Huaorani, the Donziger defendants and ADF owe plaintiffs a fiduciary duty, including a duty to protect their interests in the Lago Agrio litigation, a duty to notify plaintiffs of any arrangements with third parties (investors, funders, and/or the Republic of Ecuador) regarding the proceeds of the judgment, and a duty to notify plaintiffs of enforcement efforts, settlement negotiations or any other significant developments regarding the proceeds of the litigation.
Plaintiffs claim, on information and belief, that the money that the Donziger defendants and ADF collect will be “ ‘dissipated and tunneled to off-shore havens beyond the reach of U.S. Courts’ and that the Donziger Defendants and ADF intend to assign away (the Huaorani’s) interest in the Lago Agrio judgment in exchange for money.” It is plaintiffs’ position that the Donziger defendants and ADF have agreements with investors *537 and funders in exchange for interests in the judgments and that they have already collected more than $10 million by selling shares in the judgment; that the Republic of Ecuador expects to receive at least 90% of the proceeds of the judgment; and that the Donziger defendants and ADF intend to distribute the remaining proceeds of the judgment to lawyers and investors before passing the remaining money to Ecuadorian trusts controlled by ADF.
In November 2012, plaintiffs moved to intervene in an action pending in the Southern District of New York, titled Chevron Corp. v Donziger (2013 WL 150006, 2013 US Dist LEXIS 6027 [SD NY, Jan. 14, 2013, No. 11 Civ. 0691 (LAK)]) (Chevron action). In that action, Chevron alleges, inter alia, that the Donziger defendants and ADF conspired, with others, to extort, defraud and tortiously injure Chevron. By decision and order dated January 14, 2013, the motion to intervene was denied. The court observed that plaintiffs were “free to pursue those claims in independent actions in the New York State and doubtless other courts” (2013 WL 150006, *3, 2013 US Dist LEXIS 6027, *16-17).
Thereafter, plaintiffs commenced this action seeking a declaration that they are entitled to a proportional share of the Lago Agrio judgment (first cause of action). In addition, the complaint asserts claims against the Donziger defendants and ADF for breach of fiduciary duty/constructive trust (second cause of action); unjust enrichment (third cause of action) and an accounting (fourth cause of action).
In support of the branch of the motion that seeks dismissal based on forum non conveniens, the Donziger defendants argue that this lawsuit has nothing to do with New York and everything to do with Ecuador. They claim that, if the lawsuit is allowed to proceed, it will place a substantial burden on this court because: (1) a declaration of plaintiffs’ rights in the Lago Agrio judgment would require this court to relitigate the issues in the Lago Agrio litigation as they relate to the Huaorani people to determine whether, and to what extent, plaintiffs and the Huaorani were actually injured by Chevron’s petroleum activities in Ecuador; (2) it would require the application of Ecuadorian law; and (3) the case would present the court with claims that cannot currently be adjudicated because they depend on events that have not occurred.
In addition, they contend that litigating in New York would cause a substantial hardship to defendants because, if plaintiffs *538 are successful, defendants could possibly be faced with conflicting orders vis-á-vis New York and Ecuador which, in turn, could impede the trust from operating as intended by the Ecuadorian court.
Moreover, they argue that an alternative, more appropriate venue is available in Ecuador and that plaintiffs’ claims have no substantial nexus with New York.
In opposition, plaintiffs contend that dismissal on forum non conveniens grounds is not in the interest of justice because the Donziger defendants have manipulated and abused the Ecuadorian courts to get the outcome they desired and that the Donziger defendants’ request to move this action to Ecuador is just an example of bad faith forum shopping because the Donziger defendants believe that they will, once again, be able to manipulate the Ecuadorian courts to achieve their desired result.
In addition, they argue that plaintiffs’ claims in this case are against Donziger, a New York attorney, for misconduct which has nothing to do with Chevron’s operations in Ecuador and has everything to do with Donziger’s misconduct in New York. They contend that: (1) New York has a strong interest in adjudicating claims arising out of the misconduct of its attorneys; (2) to a substantial degree, the claims arise from Donziger’s actions in New York; and (3) the Donziger defendants will not suffer a hardship litigating in their home forum and that this case will not place an undue burden on New York courts because it is based on New York law.
“The common-law doctrine of forum non conveniens, codified in CPLR 327, permits a court to dismiss an action when it finds that in the interest of substantial justice the action should be heard in another forum” (Phat Tan Nguyen v Banque Indosuez, 19 AD3d 292, 294 [1st Dept 2005] [internal quotation marks omitted]).
Specifically, CPLR 327 (a) states:
“When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action.”
The movant seeking dismissal has a heavy burden of establishing “that New York [is] an inconvenient forum, and that a *539 substantial nexus between New York and [the] action is lacking” (see Kuwaiti Eng’g Group v Consortium of Intl. Consultants, LLC, 50 AD3d 599, 600 [1st Dept 2008] [citation omitted]).
The factors a court considers in weighing such a motion to dismiss include the burden on the New York courts, potential hardship to the defendant, the unavailability of an alternate forum, the residence of the parties, and the location of the events giving rise to the transactions at issue in the litigation (see Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479 [1984], cert denied 469 US 1108 [1985]). Under New York law, the availability of an alternative forum, though a “most important factor to be considered in ruling on a motion to dismiss” is not “an absolute precondition” for dismissal on forum non conveniens grounds (Islamic Republic of Iran at 480-481). Other factors include the location of potential witnesses and documents and the potential applicability of foreign law (see Shin-Etsu Chem. Co., Ltd. v ICICI Bank Ltd., 9 AD3d 171, 176-177 [1st Dept 2004]).
“[U]nless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed” (Anagnostou v Stifel, 204 AD2d 61, 61 [1st Dept 1994]). On the other hand, New York courts “should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York” (Shin-Etsu, 9 AD3d at 176).
Here, the balance weighs strongly in favor of the Donziger defendants, who have met their heavy burden and established that, in the interest of substantial justice, the action should be heard in Ecuador rather than New York, and that the balance of factors points in favor of dismissal.
The Donziger defendants have shown that New York is an inconvenient forum with respect to plaintiffs’ first cause of action for a declaratory judgment of their rights to the $18.2 billion Lago Agrio judgment rendered in favor of the LAPs by the Ecuadorian court, as well as plaintiffs’ third and fourth causes of action for the imposition of a constructive trust and for the rendering of an accounting with respect to any recovery that would be realized should that judgment ever be enforced.
As the Donziger defendants point out, the complaint of plaintiffs at bar is unlike that before the district court in Chevron Corp. v Donziger (2013 WL 150006, 2013 US Dist LEXIS 6027 [SD NY, Jan. 14, 2013, No. 11 Civ. 0691 (LAK)]), *540 which involves a complaint by a United States citizen against a New York attorney in a federal district court. Plaintiffs before this court are all residents of Ecuador, and seek a declaration that the plaintiffs “and other members of the indigenous Huaorani people are the direct beneficiaries of and are therefore entitled to a proportional share of the judgment against Chevron Corporation (‘Chevron’) rendered by an Ecuadorian court.” It cannot be gainsaid that the interest of Ecuador in determining the rights of its own citizens in the Lago Agrio judgment is greater than that of New York State or any other jurisdiction (see Bewers v American Home Prods. Corp., 99 AD2d 949, 950 [1st Dept 1984]).
The Donziger defendants have demonstrated that Ecuador is a forum more convenient to the parties or witnesses than New York. There is no unfairness in requiring the plaintiffs to prosecute these actions in Ecuador, as they and the LAPs reside there, ADF is domiciled there, the Texaco petroleum operation that plaintiffs assert caused the environmental damage occurred there, the underlying litigation took place there, and the Lago Agrio judgment to which plaintiffs claim a proportional share was issued there. (See Kinder Morgan Energy Partners, L.P. v Ace Am. Ins. Co., 55 AD3d 482 [1st Dept 2008].)
The determination of plaintiffs’ proportional share of the Lago Agrio judgment would place a heavy, if not impossible burden on this court. This court concurs with the Donziger defendants’ argument that retention of this action would require this court to consider anew the complicated evidence introduced in the Ecuadorian court for a determination whether and to what extent plaintiffs were injured by Chevron’s oil activities in Ecuador, and what portion of the corresponding Lago Agrio judgment plaintiffs are entitled to receive.
As argued by the defendants, “[t]he applicability of foreign law is an important consideration in determining a forum non conveniens motion” (Shin-Etsu, 9 AD3d at 178). “ ‘The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort’ (Restatement, Second, Conflict of Laws, § 379 [1])” (Babcock v Jackson, 12 NY2d 473, 482 [1963] [citation omitted]). Upon such principle, were this court to retain this action, it would be required to apply Ecuadorian law as to whether and to what extent the particular Ecuadorian people before it are entitled to a share of the proceeds awarded by an Ecuadorian court for violations of Ecuadorian law arising out of contamination that took place in Ecuador.
*541 This court is not persuaded by the argument of the plaintiffs that Ecuador does not present an adequate alternative forum because the Donziger defendants corrupted the Ecuadorian judges. Multiple United States courts have already concluded that the Ecuador courts are a suitable alternative forum. (See Aguinda v Texaco, Inc., 303 F3d 470, 477-478 [2d Cir 2002] [found Ecuadorian courts were adequate to hear the contamination claims, and Ecuadorian procedure permitting individual plaintiffs to authorize representatives, though not recognizing class actions, not so burdensome as to deprive plaintiffs of an effective forum]; Aguinda v Texaco, Inc., 142 F Supp 2d 534 [SD NY 2001]; Sequihua v Texaco, Inc., 847 F Supp 61 [SD Tex 1994].) It is noteworthy, that unlike this court, such federal courts were required to determine the availability of an alternative forum as a precondition for a non conveniens dismissal.
Regarding plaintiffs’ claim for a declaration as to their rights to a proportional share of the Lago Agrio judgment,[1] any ruling of this court with respect to the Donziger’s retainer agreement and the funding/financing agreements, though governed by the laws of this state, will not be controlling upon the Ecuadorian court. This court concurs with the Donziger defendants that even were ADF, which executed a retainer agreement with the Donziger defendants in New York, to appear before this court,[2] any directive issued in this court as to how ADF would perform the duties assigned by an Ecuadorian court would raise significant and unresolvable questions of recognition, sovereignty and comity.
Nor do the remaining causes of action which seek relief against Donziger, as a New York attorney, for misconduct arising out of Donziger’s purported representation of plaintiffs in the Ecuador litigation, to the extent that such causes of action are cognizable, have a substantial nexus to this state.
*542 The seminal case of Silver v Great Am. Ins. Co. (29 NY2d 356 [1972]) involved a defamation action by plaintiff neurosurgeon, who resided and practiced medicine exclusively in Hawaii, against defendant insurance company, domiciled in New York but authorized to do business in Hawaii and 48 other states. In Silver, the Court of Appeals reasoned that the increase in litigation arising from the recent enactment of the long-arm jurisdiction statute necessitated “a greater degree of forebearance in accepting suits which have but minimal contact with New York” (29 NY2d at 362). The Silver Court proceeded to relax the principle requiring New York courts to retain jurisdiction when one of the parties was a resident. The Court remanded the matter for a determination by the Appellate Division “in the exercise of its sound discretion” of whether the motion to dismiss the complaint on the ground of forum non conveniens should be denied or granted based upon “considerations of justice, fairness and convenience and not solely on the residence of one of the parties” (Silver at 361, 363 [emphasis supplied]; see also Nguyen v Banque Indosuez, 19 AD3d at 294).
As to plaintiffs’ claims against Donziger, a New York resident and attorney licensed to practice law in New York, this court finds that plaintiffs have not refuted the showing by defendants that Donziger’s duties as primary attorney in the United States for LAPs in the Lago Agrio litigation did not arise from his representation of the LAPs in New York, but solely and exclusively from his representation of LAPs in the courts of Ecuador. It follows that assuming Donziger purported to represent the plaintiffs herein with respect to claims before the courts in Ecuador, any such purported representation took place in Ecuador.
Engelke v Brown Rudnick Berlack Israels, LLP (45 AD3d 324 [1st Dept 2007]), where the appellate court unanimously reversed the trial court’s grant of dismissal of the complaint based upon forum non conveniens, is distinguishable from the facts of the matter at bar. In Engelke, the defendant Brown Rudick, et al., a New York law firm, represented plaintiff, a Florida resident, in New York, with respect to a transaction involving the sale of a business with a principal place of business in New York. The appellate court determined that the trial court erred in finding New York to be an inconvenient forum and Florida to be the most convenient one because “the duty forming the basis for plaintiffs claims arose from defendant’s representation of plaintiff in New York and New York has an interest in regulating *543 the conduct of its attorneys (Rosenberg & Rosenberg v Hoffman, 195 AD2d 343 [1993])” (45 AD3d at 326).
Here, in contrast, the representation undertaken by defendant Donziger on behalf of the LAPs, ADF and/or his purported clients—the plaintiffs at bar—occurred entirely on the continent of South America, specifically in the nation of Ecuador. The lawsuit at bar challenges Donziger’s representation of plaintiffs’ interests in the courts of Ecuador, and therefore does not implicate New York’s interest in regulating the conduct of its attorneys within its borders.
It is true, as plaintiffs claim, that Donziger’s retainer agreement with ADF and the LAPs charges him with the responsibility for the strategic direction of the litigation and the day-to-day management of the litigation, and for coordinating the overall legal strategy of all aspects of the litigation including the coordination of the United States legal strategy; assembling and organizing the various United States lawyers and law firms; coordinating the efforts to procure funding and financing from one or more third parties; and assembling and organizing the various nonlegal advisors, experts, service providers and others and coordinating their efforts and undertakings. As asserted by plaintiffs, Donziger performed these obligations under the retainer agreement during meetings in his home base in New York. However, such New York meetings between ADF and defendant Donziger do not suffice to create a substantial nexus with New York in that the overarching actions upon which plaintiffs seek relief took place exclusively in a foreign jurisdiction (Finance & Trading Ltd. v Rhodia S.A., 28 AD3d 346 [1st Dept 2006]).
As this court declines to retain this action on the basis of the doctrine of forum non conveniens, the Donziger defendants’ remaining arguments that ADF is an indispensable party and not subject to in personam jurisdiction of this court and that the claims of plaintiffs are not legally cognizable need not be addressed. (Shin-Etsu, 9 AD3d at 180.)
Accordingly, it is ordered that defendants Steven Donziger, the Law Offices of Steven R. Donziger and Donziger & Associates, PLLC’s motion to dismiss the complaint as against them is granted and the complaint is dismissed in its entirety, with costs and disbursements to such defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of such defendants.

. The Donziger defendants admit that ADF agrees that the Huaorani people should benefit from the Lago Agrio litigation. Plaintiffs allege in their complaint that ADF and the Donziger defendants have proposed that the Huaorani representative organize a meeting for ADF to attend so that the plaintiffs may provide information pertinent to establishing their proportional share of the proceeds of the Lago Agrio judgment. To the extent that the Huaorani’s interest in the successful enforcement of the Lago Agrio judgment is aligned with ADF’s, it would be reasonable for plaintiffs to meet with ADF for the purpose of engaging in best efforts to set a framework for negotiations and a timetable for working out an agreement as to their proportional share.

. Plaintiffs effectuated service upon ADF only after the papers on this motion were fully submitted.